## MARY BACK v. J. C. CARPENTER.

CITY OF SECOND CLASS, *in Fact, not in Law; Valid Acts.* In 1869, and
since, the city of Council Grove has been in legal contemplation a city
of the third class, and, except as hereinafter stated, it has also been dur-
ing such time a city of the third class in fact. In February, 1872, an act
of the legislature was passed, authorizing said city to organize as a city
of the second class, which it immediately did, in pursuance of such act;
and from that time up to September, 1878, a period of over six years, it
assumed to be and acted as a city of the second class; and it acted as
such city of the second class, under the laws of Kansas relating to cities
of the second class, which were valid laws. It was at all times during
that period of time, and everywhere, recognized as a city of the second
class, and it was universally reputed to be such. In September, 1878,
the supreme court of the state of Kansas declared that said act of Feb-
ruary, 1872, was unconstitutional, and void; and that the city of Council
Grove was in law only a city of the third class. (*City of Council Grove*, 20
Kas. 619.) *Held*, That although said act of 1872 was unconstitutional
and void, and although the city of Council Grove in legal contemplation
was only a city of the third class, yet that in fact it was a city of the
second class, acting under valid laws, and under color of authority, and
being everywhere recognized as a city of the second class, and being
universally reputed to be such, it was a city of the second class *de facto;*
and that everything done by it and its officers during that time, which
would have been valid if the city had been in law, as well as in fact, a
city of the second class, must be held legal and valid.

### *Error from Morris District Court.*

EJECTMENT, brought by *Back* against *Carpenter*, to recover
the possession of certain real estate, situated in the city of
Council Grove, in Morris county. Plaintiff claimed title from
the original patentee down to herself. Defendant relied on
certain tax deeds. Trial at the April Term, 1882, of the dis-
trict court, and judgment for defendant. Plaintiff brings the
case here. The facts are fully stated in the opinion.

*M. B. Nicholson*, for plaintiff in error.

*John T. Bradley*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action of ejectment, brought by Mary Back against J. C. Carpenter, for the recovery of certain lots in the city of Council- Grove, Morris county. The plaintiff's claim to the property is founded upon a regular chain of title from the original patentee down to herself, while the defendant's title is founded upon certain tax deeds issued by the county clerk of Morris county, for taxes levied during the years 1874, 1875, 1876, and 1877. The only question involved in the case is whether these tax deeds are valid or not. These tax deeds are admitted to be valid, unless certain taxes included therein are invalid; and the only ground upon which it is claimed that these taxes are invalid is, that at the time when they were levied the city was wrongfully assuming to be and to act as a city of the second class, when in law it was only a city of the third class. The court below held that the taxes were valid, and decided the case in favor of the defendant and against the plaintiff; and the plaintiff now brings the case to this court.

It appears that in 1869, and since, the city of Council Grove has been in legal contemplation a city of the third class; and that during all that time, except an interval of something over six years, from the spring of 1872 up to the fall of 1878, it was in fact a city of the third class. During that interval, however, it assumed to be and acted as a city of the second class, and the alleged illegal taxes included in said tax deeds were levied during said interval. It assumed to be and acted as a city of the second class, for the following reasons: In February, 1872, the legislature of Kansas passed an act authorizing the city of Council, Grove and other cities to organize as cities of the second class. (Laws of 1872, ch. 101.) This act was approved by the governor of the state of Kansas, on February 29, 1872, and, by one of its own provisions, it was to take effect and be in force from and after its publication in the Kansas *Weekly Commonwealth;* and it was so

published in the Kansas *Weekly Commonwealth* on March 14, 1872. Immediately afterward the mayor and council of such city, in pursuance of the provisions of such act, proceeded to organize the city as a city of the second class, so that it should afterward be governed by the laws of Kansas relating to cities of the second class, and not by the laws of Kansas relating to cities of the third 'class; and it was so organized, officers were duly elected and qualified, and the city government was turned over by the then third-class-city officers to the newly-elected officers, who then claimed to be the officers of the city as officers of a city of the second class; and the city then became in fact a city of the second class. All this was freely acquiesced in by all persons, and the city was afterward everywhere recognized as a city of the second class, and universally reputed to be such. This continued to be the case for more than six years, and until September, 1878, when the supreme court of the state of Kansas declared that the said act of 1872 was unconstitutional and void, and that the city of Council Grove was in law only, a city of the third class. (*City of Council Grove*, 20 Kas. 619.) During all that interval of time from the spring of 1872 up to the fall of 1878, the city was governed as a city of the second class under the laws relating to cities of the second class, and in accordance with the provisions of such laws. There was no conflict of authority anywhere; there was no objection or remonstrance made by any citizen or tax-payer, or by any other person; there were no officers, nor any other persons claiming the offices of the city as a city of the third class; but in every respect, and in every particular, the government and the business of the city were conducted and carried on as though the city was legally as well as in fact a city of the second class. Elections were had; officers were elected and reëlected; city courts were maintained; order preserved; ordinances passed; public property kept in good condition; taxes levied, collected and properly applied; schools maintained; streets kept in good condition, and everything else in fact was done that should have been

done if the city had been legally as well as in fact a city of the second class.

Now, notwithstanding all these things, were all the acts of all the city officers, from the spring of 1872 up to the fall of 1878, illegal and void? Were the taxes levied by such officers illegal and void? Were all the judgments rendered in the municipal courts, and by the police judges and justices of the peace for such city, illegal and void? Has every offender who has been convicted of a misdemeanor, or convicted of a violation of any city ordinance, an action against the officers of such city for false imprisonment? Were the moneys which belonged to the city as a city of the third class, and which were turned over to and paid out by the officers of the city while acting as officers of a city of the second class, illegally paid out? and may they now be recovered? Were all contracts made by the city officers with school teachers for wages, and with all others, whether for wages, or not, and whether for the purchase or repair of public property, or not, illegal and void? Were all debts created by the city officers during that time, and are they now, illegal and void? Were all obligations incurred by the city or the city officers during that time, and are they now, nullities? And to whom does the public property purchased and acquired by the city officers during that time belong? Is everything which happened during that time with reference to the city illegal and void?

We think that all these questions must be answered in the same way that they should be answered if the city had been during all that time, in law as well as in fact, a city of the second class. The city assumed to be a city of the second class, and it acted as such under the laws of Kansas relating to cities of the second class, which were valid laws. It was recognized by everybody to be a city of the second class, as it claimed to be; it was universally reputed to be such; and it became such under color of authority. It become such by virtue of an act of the legislature, which was

in fact passed by the legislature, and was in fact approved by the governor, although the act, for constitutional reasons, never became a law; and it also became a city of the second class by virtue of the acts of the regularly constituted authorities of the city of Council Grove while the city was unquestionably a city of the third class, in fact as well as in law. In other words, it was a city of the second class, *in fact*, under color of authority, although it was not such a city in law; and this was sufficient to make it a *de facto* city of the second class. (*School District No. 25 v. The State*, ante, p. 57, and authorities there cited.) The acts of the legislature and governor, though invalid, and the acts of the regular as well as the irregular city officers, and the acts of all others with reference to the city, gave it color of authority to act as a city of the second class, and it so acted in fact and under valid laws. The city of Council Grove has been at all times since 1869 a valid municipal corporation. A portion of the time, it rightfully and legally acted as a city of the third class; and it should have so acted during the whole of the time; but about six years and a half of the time, it acted as a city of the second class; and while it wrongfully did so, still it so acted under color of authority and under valid laws, as above stated; and hence we think it must be held that all its acts are valid which would have been valid if it had been rightfully and legally acting as a city of the second class.

With these views, it follows that the judgment of the court below must be affirmed.

All the Justices concurring.