ALBERT W. KNOWLES, *et al.*, v. THE BOARD OF EDUCA-
TION OF THE CITY OF TOPEKA.

CONSTITUTIONAL LAW; *School District; Special Act.* Chapter 56 of the
Laws of 1885, authorizing the board of education of the city of Topeka
to issue bonds of the school district for the purpose of purchasing sites
for school buildings, erecting new school buildings, etc., in an amount
not exceeding one hundred thousand dollars, upon a majority vote of
the electors of the district, does not conflict with ¿17 of art. 2, nor with
¿1 of art. 12 of the state constitution, and is therefore not unconstitu-
tional.

*Error from Shawnee Superior Court.*

ACTION commenced June 2, 1885, in the superior court of
Shawnee county, by *Albert W. Knowles* and others, to restrain
and prohibit *The Board of Education of the City of Topeka*
from issuing certain bonds authorized by an act of the legis-
lature approved February 21, 1885, entitled "An act to au-
thorize and empower the board of education of the city of
Topeka, in Shawnee county, state of Kansas, to issue the
bonds of their school district, for the purpose of purchasing
sites, erecting buildings, and making additions to present
buildings, and furnishing said buildings and additions as school
rooms." At the time of the commencement of the action a
temporary injunction was granted, and subsequently the de-
fendant filed its answer and moved to dissolve the temporary
injunction. The parties stipulated that the answer, excepting
the allegation therein that defendant was authorized to issue
its bonds, contained all the facts in the case, and was true. On
June 5, 1885, the court dissolved the temporary injunction,

and dismissed the petition at the costs of the plaintiffs. The judge hearing the case filed the following written opinion:

WEBB, J.: This is an action brought in the names of Albert W. Knowles and four other citizens and tax-payers, on their own behalf and on behalf of all other property-holders and tax-payers of the city of Topeka, as plaintiffs, against the board of education of the city of Topeka, as defendant, to perpetually enjoin the defendant from issuing and negotiating certain proposed bonds of its school district, said school district being the city of Topeka. The case was heard on the petition, answer, and certain facts agreed upon, and from these the case may be briefly stated as follows:

The legislature, at its recent session, passed an act "to authorize and empower the board of education of the city of Topeka, in Shawnee county, to issue the bonds of their school district for the purpose of purchasing sites, erecting buildings, and making additions to present buildings, and furnishing said buildings and additions as school rooms." This act was approved on the 21st of February, and stands as chapter 56 of the Laws of 1885. The act authorizes said board of education to issue the bonds of said district "in any sum or sums not exceeding one hundred thousand dollars" for the purposes mentioned, provided that the question of issuing such bonds should be first submitted to the electors of said district, and a majority of said electors voting thereon should vote in favor of issuing the same. At a regular meeting of defendant board, held on the 23d of March, said board resolved to submit to the electors of said school district the question of issuing the bonds of said district in the sum of $50,000, for the purposes mentioned in the statute, said question to be voted upon at the regular city election to be held on the 7th of April, due notice thereof to be given for ten days prior to said election. Due notice of such submission was given by the publication of a "Bond Proposition to the Electors of the City of Topeka," in each of the three daily newspapers published in said city, the *Capital*, the *Commonwealth*, and the *State Journal*, for ten days prior to said 7th day of April, which proposition was sufficient in form and substance, and was signed by the president and clerk of the defendant. It is also shown that at said election there were 1,823 votes cast in favor of the issuing of said bonds, and 940 votes against such issuance—the majority for the bonds being 883.

The defendant, regarding itself as fully authorized, by reason

of the premises, to issue the bonds of said district to the amount of fifty thousand dollars, was about to do so when this action was commenced. A temporary injunction was granted as prayed for, whereupon the defendant filed its answer and moved to dissolve said temporary injunction. Upon the hearing of the motion, the plaintiffs contended that said chapter 56 of the Laws of 1885, purporting to authorize and empower the defendant board to issue the bonds of said school district for the purposes mentioned, is unconstitutional and void; and this is really the only controverted question in the case. The argument of the plaintiffs is briefly this: The school district of said city of Topeka, represented by the defendant, the board of education of said city, is a corporation; (ch. 48, Laws of 1870, §1; ch. 100, Laws of 1872, §100; ch. 122, Laws of 1876, art. 11, §4.) Since January, 1881, Topeka has been a city of the first class; and ever since that date there have been three cities of that class—Atchison, Leavenworth, and Topeka—all governed by the same general laws, and each constituting a school district, and each of said school districts is governed by a board of education provided for by the same general laws applicable alike to all said districts. And it was argued that said chapter 56, Laws of 1885, undertakes to confer corporate powers, and that, as it relates to the city of Topeka alone, and not to all cities of the first class, it is a special act, and as such is prohibited by the very words of section 1 of article 12 of the constitution, and is therefore void.

It may not be at all important to the decision of the question presented for determination in this case, but it may be well enough to note the fact, that when the acts above cited—chapter 48, Laws of 1870, chapter 100, Laws of 1872, and chapter 122, Laws of 1876—were passed, Topeka was a city of the second class; and it may be well to call attention to the peculiar phraseology of said acts:

Act of 1870, ch. 48, § 1: "Every *school district* [of cities of second class] organized in pursuance of this act shall be a body corporate, and shall possess the usual powers of a corporation for public purposes, by the name and style of 'School District No. ——, of the county of ——,'" etc.

Act of 1872, ch. 100, § 100: "The *public schools* of each city organized in pursuance of this act shall be a body corporate, and shall possess the usual powers of a corporation for public purposes, by the name and style of '*The Board of Education of the City of* ——,'" etc.

Section 4 of article 11 of chapter 122, Laws of 1876, is merely a reënactment of §100 of the act of 1872, just quoted —said chapter 122 being a revision and consolidation into one act of all the school laws of the state.

Topeka remained a city of the second class until January, 1881, when it became a city of the first class. Article 10 of said chapter 122, Laws of 1876, relates to "public schools in cities of the first class." Its provisions, as to the powers and duties of the board of education, are very similar to those contained in article 11 relating to "public schools in cities of the second class." But there is no provision in said article 10 declaring that "the public schools" or the "school district" of cities of the first class shall be *bodies corporate.* Nor has the writer of this opinion been able to find any such provision in any act or statute, although the powers conferred by said article 10 are those usually conferred upon incorporated school districts, and the government of the public schools in incorporated cities has been in the hands of "boards of education" since 1867. There has been no legislation respecting boards of education of cities of the first class since Topeka became a city of that class, except that which regulates the number of members, and fixes their terms. But it will hardly be contended that the corporate powers lawfully conferred upon the board of education of the city of Topeka when said city was a city of the *second* class have been lost or destroyed by reason of the transition of the city from a city of such class to a city of the first class. It will therefore be considered, for the purposes of this case, that the public schools of the city of Topeka are "a body corporate under the name and style of the board of education," and that therefore said chapter 56 of the Laws of 1885 is not void for want of a proper body corporate to which it can apply.

Upon the argument to dissolve the temporary injunction some additional facts were stated and conceded, which it may be well to notice. Prior to 1867 the territory now embraced in the city of Topeka, together with other territory since included in other districts, constituted a school district duly organized *and incorporated* under the general school laws as "School District No. 23, of the county of Shawnee;" (Comp. Laws 1862, ch. 181, § 24; Gen. Stat. 1868, ch. 92, § 24; Laws of 1876, ch. 122, art. 3, § 2; Comp. Laws 1879, p. 824, § 19.) Said city school district is still known as "School District No. 23." The clerk of the board of education makes his annual reports to the county superintendent of public instruction as "Clerk of Topeka School District No. 23;" and said county superintendent, in making his semi-annual distributions of the state and county school funds, treats said city school district as "District No. 23," and issues his orders or warrants on the

county treasurer for the school moneys due upon such distributions to the public schools of the city. It would therefore seem that notwithstanding the fact of the actual or supposed incorporation *anew* of the public schools of cities, and by a different name, and that by such reincorporation they are governed somewhat differently from school districts organized under the general school laws of the state, they are still *simply school districts*, and in no sense corporations of a higher grade than school districts generally throughout the state. Indeed, it could not be otherwise, as each city of the first class (and each city of the second class also) is a municipal corporation in the highest sense of the term, and an incorporated school district occupying or embracing the same territory must of necessity be inferior to the powers and jurisdiction of the city itself, and therefore at best can be a *quasi* corporation only, its relative position toward the city being no better than that of the ordinary school district toward the county in which it is situated, even if so good.

The principal question remains: Is said chapter 56 a "special act conferring corporate powers," within the meaning and intent of section 1 of article 12 of the constitution? If the views already expressed respecting the proper status of a city school district are correct, it would seem that the question has long been settled by undoubted authority. Section 1 of article 12 of the constitution is as follows:

"SECTION 1. The legislature shall pass no special act conferring corporate powers. Corporations may be created under general laws, but all such laws may be amended or repealed."

If it were an open question, the writer hereof would be of the opinion that said section had reference only to private corporations; that no portion of said article 12, except the fifth section, could be fairly construed as having reference to municipal corporations. But a contrary construction was given by the supreme court in 1866, in the case of the *City of Atchison v. Bartholow*, 4 Kas. 124, 144, where it was held that, while the whole article is merely restrictive of the general legislative power conferred upon the legislature by section 1 of article 2, yet that it applied as well to laws creating and governing municipal corporations as to statutes creating private corporations. General laws have been upon the statute book for the organization of counties, for the organization of incorporated cities, for the incorporation and organization of school districts, and for the creation of private corporations, for twenty years or more. It is a popular idea, (and there are some rea-

sons and decisions for such opinion—see Bouvier's Law Dic., title, *Municipal Corporation*,) that a *county* is a "municipal corporation;" and in like manner municipal townships, so called, are frequently spoken of as municipal corporations. But this does not appear to be correct. Judge Dillon, in his excellent treatise on the Law of Municipal Corporations, third edition, speaks of political, public, and civil, as well as private corporations. He says:

"All corporations intended as agencies in the administration of civil government are *public*, as distinguished from *private* corporations. Thus, an incorporated school district or county, properly speaking is not, while the city is, a *municipal* corporation." (Sec. 22.)

But the status of an incorporated school district under the laws of this state has been definitely settled by our own supreme court. In the case of *Beach v. Leahy*, 11 Kas. 23, 31, decided in 1873, the court says:

"The mere fact that these organizations are declared in the statute to be bodies corporate, has little weight. We look behind the name, to the thing named. Its character, its relations and its functions determine its position, and not the mere title under which it passes. . . . The conclusion to which these investigations have led us is, that among public corporations *only corporations proper* are included within the scope of article 12 of the state constitution, and that *a school district* is only a *quasi* corporation, and not covered by its provisions."

In 1871 the legislature passed an act "authorizing School District No. 2, Neosho county, to issue bonds to build a school house." The district board issued the bonds authorized by said act, and when the taxes were levied to pay the interest on bonds, Beach and others sought by injunction to prevent the collection of said taxes on the ground that said bonds were void. The act referred to was claimed to be unconstitutional upon the same grounds now urged against the validity of chapter 56 of the Laws of 1885. The case of *Beach v. Leahy* was brought to test its validity, and the supreme court held that the act was valid. This decision would seem to be sufficient authority alone upon which to rest a decision in the case at bar. But there are numerous other decisions of the same court which go to show that "municipal corporations" proper are incorporated cities, towns and villages, and that counties and municipal townships, though public corporations, are not within the reach of section 1 of article 12 of the constitution. Thus:

"The provision of article 12 of the constitution has no application to counties as counties." (*The State, ex rel., v. Commissioners of Pawnee County*, 12 Kas. 439.)

"Section 5 (of article 12) refers to municipal corporations proper, *cities*,

*towns and villages,* and the manifest scope of the article is limited to private corporations and municipal corporations proper." (*Commissioners of Potta-watomie County v. Sullivan,* 17 Kas. 61.)

"Counsel fail to note the distinction between municipal corporations proper and *quasi* corporations. This distinction is pointed out and commented on in *Beach v. Leahy,* 11 Kas. 23. Cities, towns and villages are municipal corporations proper, while counties, townships, school districts, and road districts are *quasi* corporations. The difference between these two classes of corporations is well established, and a principle applicable to the one class is not necessarily applicable to the other." (*Eikenberry v. The Township of Bazaar,* 22 Kas. 561.)

In the case of the *Commissioners of Norton County v. Shoe-maker,* 27 Kas. 79, the validity of a special act fixing the compensation of the county clerk and county treasurer of Norton county was sustained. In the course of the opinion, Chief Justice Horton says:

"The legislature, under the constitution, has discretion to determine the necessity of such special laws; and such statute is analogous to those conferring authority by special acts upon counties, townships and school districts to issue bonds."

The cases of *Francis, Treas., v. A. T. & S. F. Rld. Co.,* 19 Kas. 303; *Comm'rs of Marion Co. v. Riggs,* 24 Kas. 255; and *Gray v. Crockett,* 30 Kas. 138–142, may be read with profit, as throwing some light upon the general question of the validity of special legislation.

The conclusion seems irresistible, that a special act giving authority to a particular county, township, or school district, by name or number, to issue its bonds for any proper purpose, or to do any other necessary or proper act, is not a "special act conferring corporate powers," coming within the reach or scope of section 1 of article 12 of the constitution. And as said chapter 56 of the Laws of 1885 does not relate to a municipal corporation proper, but only to the board of education of a particular school district, and limits the powers of such board to the issuance of the bonds of said district for proper and necessary purposes, said act is constitutional and valid. The temporary injunction will be dissolved, the plaintiffs will take nothing by their petition, and the defendant will have judgment against the plaintiffs for costs.

The plaintiffs excepted to the ruling and judgment of the court, and bring the case here.

*H. C. Safford,* for plaintiffs in error.

*Waters & Chase,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: The only question presented in this case upon the record before us is as to the constitutionality of an act of the legislature of this state approved February 21, 1885, authorizing the board of education of the city of Topeka to issue bonds of its school district for the purpose of purchasing sites for school buildings, erecting new school buildings, etc., in an amount not exceeding one hundred thousand dollars, upon a majority vote of the electors of the district. The plaintiffs contend that the act is a special law, and therefore in conflict with § 17 of article 2 of the constitution of the state, and that the act confers corporate powers, and thereby is also in conflict with § 1 of article 12 of the constitution. The first objection to the act must be disposed of favorably to its constitutionality, upon the authority of *The State v. Hitchcock*, 1 Kas. 178; and *Comm'rs of Norton County v. Shoemaker*, 27 Kas. 77. It was decided in *The State v. Hitchcock*, supra—

"That the legislature must determine whether its purpose can or cannot be expediently accomplished by a general law, and the mere fact that certain results could be accomplished by a general law does not necessarily avoid a special law passed to effect them."

In *Comm'rs of Norton County v. Shoemaker*, supra, the writer of this stated in the opinion, among other things, that—

"The legislature, under the constitution, has discretion to determine the necessity for such special laws, and such statute is analogous to those conferring authority by special acts upon counties, townships and school districts to issue bonds." (See also *Beach v. Leahy*, 11 Kas. 23; *Harvey v. Comm'rs of Rush County*, 32 id. 159.)

The other objection involves a more difficult question; but upon careful consideration, we think the decision in *Beach v. Leahy*, supra, and the reasoning of the court therein, decisive of the case in favor of the affirmance of the judgment of the court below.

In commenting upon article 12 of the constitution, Mr. Jus-

tice BREWER, speaking for the court in that case, said, with reference to counties, townships and school districts, that—

"They are called in the statute bodies corporate; yet they are denominated in the books, and known to the law, as *quasi* corporations, rather than as corporations proper. They possess some corporate functions and attributes, but they are primarily political subdivisions, agencies in the administration of civil government, and their corporate functions are granted to enable them more readily to perform their public duties. . . . Giving corporate capacity to certain agencies in the administration of civil government, is not the creation of such an organization as was sought to be protected by article 12 of the constitution. This distinction between *quasi* corporations and corporations proper is no new thing, nor of recent recognition. . . . The conclusion to which these investigations have led us is, that among public corporations only corporations proper are included within the scope of article 12 of the state constitution, and that a school district is only a *quasi* corporation, and not covered by its provisions."

The board of education of the city of Topeka, of course, is not a private corporation, nor is it a corporation created with political and legislative powers like cities and towns for the local civil government and police regulation of the inhabitants of the particular district included in the boundaries of the corporation. The fact that its limits or boundaries are the same as those of the city of Topeka, makes no difference in that particular. It is just the same as if it constituted any other territorial district described as the board of education of said district. The board of education has power to select its own officers, to make its rules and regulations, to establish a high school whenever in its opinion the educational interests of the city demand the same, and to exercise sole control over the public schools and school property of the city. The title of all property held for the use or benefit of the public schools within the territory over which the board of education has jurisdiction, is vested in the board. The board is required annually to make an estimate of the amount of funds necessary and requisite for the support and maintenance of the public schools under its

charge, and also of the amount necessary to pay the interest on the bonds issued by the board, accruing during the year, and the amount of sinking fund necessary to be collected during such year for the payment and redemption of the bonds; and shall cause to be certified by the president and clerk of the board to the county clerk of the county in which the city is situated, the percentage by it levied on the real and personal property of and within the city, as returned on the assessment-roll of the county. The board may also issue bonds and negotiate the same for school buildings, etc., upon conditions prescribed by the statute. In brief, the corporate functions of the board of education of a city of the first class are granted by the state to assist in carrying out the general common-school system adopted by the state. (Laws of 1876, ch. 122, art. 10; Laws of 1881, ch. 149, §§ 1, 2; Laws of 1885, ch. 100, § 1.)

In our opinion, the board of education of the city of Topeka is a distinct corporation from the municipal corporation of the city of Topeka. We think it is a *quasi* corporation only, and is not a corporation proper, as embraced within the scope of article 12 of the state constitution. (*Heller v. Stremmel*, 52 Mo. 309; *Wright v. Stockman*, 59 Ind. 65.)

For a fuller statement, and a further discussion of the case, we refer to the opinion of the learned trial judge, in whose conclusion as to the constitutionality of chapter 56, we concur.

The order and judgment of the superior court will be affirmed.

All the Justices concurring.