HANNAH RITCHIE et al. v. JOHN R. MULVANE et al.

TERRITORY, De Facto, not De Jure, Part of City; Taxes Recovered. From September 4, 1877, up to October 7, 1884, certain territory constituted de facto, though not de jure, a part of the city of Topeka and of the school district of Topeka, and this under an ordinance regularly passed by the mayor and council of the city of Topeka on the first-mentioned date, in pursuance of an act of the legislature regularly passed and approved, which act though general in form was special in fact, and therefore void under §1, art. 12, of the constitution, for

16 — 39 KAS.

| 39 | 241 |
| 47 | 253 |

| 39 | 241 |
| 49 | 127 |
| 50 | 568 |

| 39 | 241 |
| e70 | 254 |

| 39 | 241 |
| 73 | 421 |

| 39 | 241 |
| f75 | 10 |

| 39 | 241 |
| e79 | 560 |

| 39 | 241 |
| 82 | 419 |

the reason that it attempted to confer corporate power upon certain cities; and taxes were levied upon the annexed territory in the same manner as though such annexed territory was a part of the city of Topeka and of the school district of Topeka, in law as well as in fact, and certain real estate in such annexed territory was sold at a tax sale for such taxes to an individual purchaser, and a tax deed was afterward executed on such sale; and in an action in the nature of ejectment brought by the tax-deed holder against the original owner of the land for the recovery thereof, the district court held that the tax deed and the city taxes were void, and that the state, county and school-district taxes were valid to the extent that they might be recovered in such action under § 142 of the tax laws. *Held*, That the district court did not err with reference to said state, county and school-district taxes.

## Error from Shawnee District Court.

ACTION · in the nature of ejectment, brought by *John R. Mulvane* and *Joab Mulvane* against *John Ritchie*, Hale Ritchie, John Ritchie jr., and others, to recover certain real estate described in the plaintiffs' petition. The defendants answered. Afterward a trial was had before the court without a jury, and the court made special findings of fact and conclusions of law, among which are the following:

### FINDINGS OF FACT.

"1. The real estate in controversy is part of the northeast quarter of section six, in township twelve, of range sixteen, in Shawnee county, Kansas, and is adjacent to the city of Topeka, and is included in what is commonly called 'Ritchie's addition,' which is described as follows: Commencing at a point where the north line of section five, town twelve, of range sixteen, intersects the center of Shunganunga creek; thence southerly with the center of said creek as it winds and turns, to its intersection with the prolongation east of the south line of Twelfth street of the city of Topeka; thence westerly along said prolongation of Twelfth street to its intersection with the prolongation south of the east line of Jefferson street of said city; thence southerly along said prolongation of Jefferson street to its intersection with the south line of the northeast quarter of section six, town twelve, range sixteen; thence west along the south line to its intersection with the west line of said quarter-section; thence north to the northwest corner of said quarter-section; thence east to the place of beginning.

" 2. Said defendant has sold parcels of land in said terri-
tory known as 'Ritchie's addition,' describing the same by
metes and bounds as corresponding to lots on certain streets
of said city extended across said territory and fronting on
what would correspond to said streets if they were so extended,
and corresponding in shape and size with lots in said city, and
for more than fifteen years roads in front of said tracts have
been in common use as streets, with cross-streets correspond-
ing to the streets and cross-streets of said city extended across
said territory.

" 3. On the 15th day of April, 1875, the mayor and city
council of the city of Topeka, then a city of the second class,
passed an ordinance whereby they attempted to take into the
corporate limits of the city of Topeka the territory described
in finding No. 1; the said John Ritchie was then, and for more
than five years prior thereto had been, the owner of a ma-
jority of the acres attempted to be taken into the city of To-
peka by virtue of said ordinance; said John Ritchie did not
consent in writing or otherwise to the said annexation, and he
never made, acknowledged and recorded a plat of said tract.
After the passage of said ordinance the city of Topeka exer-
cised jurisdiction over said tract, which was unopposed by a
majority of the citizens residing thereon until October 7th,
1884, but the said Ritchie during all said time was the owner
of a majority of the acres in said tract, and he opposed the exer-
cise of the jurisdiction of said city over said tract.   During
said time no townships adjoining said tract attempted to exer-
cise jurisdiction over said tract, and never attempted to assess
the property in said tract for taxation.   During all said time
the inhabitants of said tract generally voted at the city election
held in the city of Topeka, and a person residing on said tract
at one time held the office of city councilman for the city of
Topeka.   During said time the fire service of the city of
Topeka was extended over said tract, and a fire-alarm box was
placed in said territory.   Taxes were levied and collected upon
a majority of the inhabitants of said territory, but during said
time the defendant John Ritchie never voted in the city of
Topeka or paid taxes therein on said land, although the same
were levied thereon for every year since 1875 up to the year
1884, and the trustee of Topeka township made no attempt to
assess any of the above tracts for taxes.   During said period,
a school house was built upon said tract, and schools were
maintained therein by the board of education of the city of
Topeka, and the children of proper age residing upon said

territory were enrolled as school children of the city of Topeka.
Sidewalks were ordered to be built by the city of Topeka, and
were built and paid for by the abutting land-owners of said
territory, except the defendant John Ritchie, and said side-
walks were kept in repair by the owners of the land abutting
the same, except the defendant John Ritchie; and a culvert
was built by said city on said tract, and three water hydrants
were placed upon said territory in the year 1881, upon which
the said city agreed to pay rent.    The said territory was never
taken into the city of Topeka or annexed for school purposes,
except by said ordinance of April 15, 1875, and all the taxes
described in the findings in this action as school taxes were
levied by said board of education of the city of Topeka.
From the 15th day of April, 1875, up to October 7, 1884,
the defendant John Ritchie was and is now the owner of all
the tracts of land described in the plaintiffs' petition, unless
the tax deeds hereinafter described are valid and divested him
of the title thereto.

"4. The real estate in controversy was subject to taxation
for the year 1876, and thence hitherto.

"5. The valuations of said real estate in controversy by the
city assessor of said city for the years 1876, 1877, 1878, 1879,
1881, 1882, 1883, were not excessive.

"6. The real estate in controversy was sold on the 4th day
of September, 1877, for the taxes of 1876, to the plaintiffs,
who paid the taxes for the subsequent years.

"7. The defendants never paid or offered to pay the taxes
on said real estate in controversy or any part thereof for any
of said years.

"8. On November 8, 1880, J. Lee Knight, county clerk
of said Shawnee county, executed to plaintiffs a tax deed for
each of the tracts of real estate in controversy, which deeds
are in the form and were executed and acknowledged in the
manner provided by statute.

"9. The several tracts of real estate in controversy so sold
for delinquent taxes were sold to the plaintiffs at the dates
and for the amounts, and subsequent taxes paid thereon by
them, at the dates and in amounts respectively as follows: On
the 4th day of September, 1877, the following tracts of land,
viz. A tract in the northeast quarter of section six, town
twelve, range sixteen, east of 6th P. M. as follows, viz.: Be-
ginning on a line with the east side of Quincy street and 1820
feet southerly from southeast corner of Tenth avenue east and
Quincy street, city of Topeka, southerly on the said line 25

feet; thence easterly at right angles to said line 150 feet; thence northerly parallel to said line 25 feet; thence westerly 150 feet, to place of beginning.　Same as lot 454 Quincy street, city of Topeka, Shawnee county, state of Kansas, was sold to said plaintiffs for the taxes of the year 1876.　Plaintiffs paid at the dates below given, the amounts of taxes below given, levied on said above-described tracts of land, for county, state and city purposes respectively for the years below given, and have paid the expenses of advertising the sale of said tracts, the certificate fee, the county clerk's fee for issuing tax deeds, and the recorder's fee for recording tax deeds as follows, viz."　(Here follows a tabular statement of all the taxes paid for the years 1877 up to 1882, inclusive, and the penalties, costs and interest thereon.　The findings numbered 10, 11, 12, 13, 14, 15 and 16 are with reference to the sales of other tracts of land, and the payment of taxes, penalties, interest and costs thereon, and they are the same in form as finding numbered 9.)

"17.　Said John Ritchie never filed in the office of the register of deeds of Shawnee county any plat of the land described in the first finding of fact herein, and never made and acknowledged any plat of said premises subdividing the same into blocks and lots with streets and alleys, and never consented that said premises should be made or become a part of the city of Topeka.　And said John Ritchie never subdivided said property into the pieces and tracts as above described and assessed for taxation, nor did he ever divide said tract of land described and bounded in the first finding of fact herein, into lots, blocks, streets and alleys, or authorize the same to be done.

"18.　Said premises were assessed for taxation by the city assessor for the city of Topeka for the years 1876, 1877, 1878, 1879, 1880, 1881, 1882, and not by the trustee of Topeka township.

"19.　The city taxes for the city of Topeka for the years 1876, 1877, 1878, 1879, 1880, 1881, 1882, were levied by resolution of the city council, and not by ordinance.

"20.　On the 8th day of December, 1883, the said John Ritchie, with others, commenced their action in this court for the purpose of enjoining the collection of the taxes levied on said tract for state, county, city and board of education purposes, in which action a temporary injunction was granted, and in the trial of said action in this court said injunction was made perpetual and said judgment was affirmed by the supreme court on the 7th day of October, 1884.　During all

the time from the 15th day of April, 1875, to the 7th day of October, 1884, the city of Topeka had notice that the defendant John Ritchie opposed the annexing of the said territory to the city of Topeka, and resisted the city's exercise of jurisdiction over the same."

At the January term, 1886, judgment was rendered for defendants and against plaintiffs with regard to the recovery of the real estate; but judgment was rendered for the plaintiffs and against the defendants for the recovery of certain taxes paid by plaintiffs thereon. The defendants have brought the case to this court.

*Wm. P. Douthitt*, and *C. M. Foster*, for plaintiffs in error.

*Patrick Bros.*, and *J. G. Slonecker*, for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action in the nature of ejectment, brought by John R. Mulvane and Joab Mulvane against John Ritchie, Hale Ritchie, John Ritchie jr., and others, to recover certain real estate described in the plaintiffs' petition. The defendants answered. Afterward a trial was had before the court without a jury, and the court made special findings of fact and conclusions of law, and upon such findings and conclusions rendered judgment in favor of the defendants and against the plaintiffs with regard to the recovery of the real estate, but rendered judgment in favor of the plaintiffs and against the defendants under § 142 of the tax law, for the recovery of the amount of the taxes paid by the plaintiffs on such real estate, together with the interest and costs thereon, except the taxes levied on the land for the benefit of the city of Topeka, with the interest and costs thereon; and to reverse this judgment, the defendant John Ritchie, as plaintiff in error, brought the case to this court, making the plaintiffs below the defendants in error. Afterward John Ritchie died, and the case was revived in the names of Hannah Ritchie, John Ritchie and Hale Ritchie, his successors in interest.

The defendants below were in the possession of the lands in controversy, and claimed to own the same by virtue of a

regular chain of title from the government down, while the plaintiffs below claimed title only under certain tax deeds. The plaintiffs below, however, who are now the defendants in error, claim in this court only to be entitled to recover the amount of certain taxes which they paid on the lands as follows: The plaintiffs below purchased the lands in controversy at a regular tax sale held on September 4, 1877, for the taxes of the year 1876, and afterward paid the taxes on such lands for the subsequent years, 1877, 1878, 1879, 1880, 1881, and 1882. They also in proper time procured regular tax deeds for the lands so purchased. These are the tax deeds under which the plaintiffs below claimed title when they commenced this action. The taxes paid by them were city taxes, county taxes, state taxes, and school-district taxes. The tax deeds and the city taxes were held to be void by the court below, and the judgment of the court was rendered accordingly. No complaint is made concerning this judgment. But the court below also held that the county taxes, state taxes and school-district taxes were valid to the extent that they might be recovered by the plaintiffs below under §142 of the tax law, and rendered judgment accordingly; and of this judgment the plaintiffs in error representing John Ritchie, who was one of the defendants below, complain. That section reads as follows:

"Sec. 142. If the holder of a tax deed, or anyone claiming under him by virtue of such tax deed, be defeated in an action by or against him for the recovery of the land sold, the successful claimant shall be adjudged to pay to the holder of the tax deed, or the party claiming under him by virtue of such deed, before such claimant shall be let into possession, the full amount of all taxes paid on such lands, with all interests and costs as allowed by law up to the date of said tax deed, including the costs of such deed and the recording of the same, with interest on such amount at the rate of twenty per cent. per annum, and the further amount of taxes paid after the date of such deed, and interest thereon at the rate of twenty per cent. per annum."

It has been held by this court that this section applies to all actions in the nature of ejectment, as well to those where

the tax-deed holder is the plaintiff in the action and not in the possession of the property, ( which is this case,) as to those where the tax-deed holder is the defendant in the action and in the possession of the property. (*Fairbanks v. Williams*, 24 Kas. 16, 19; *Russell v. Hudson*, 28 id. 99, 101; *Coonradt v. Myers*, 31 id. 30; *Belz v. Bird*, 31 id. 139, 145; *Krutz v. Chandler*, 32 id. 659.) In construing the foregoing statute, when it was numbered § 117 of the tax law, this court, in the case of *Smith v. Smith*, 15 Kas. 290, 295, used the following language:

"This statute was enacted in the interest of equity and justice, and its provisions should be so construed as to promote justice. It is wholly unlike that class of statutes which attempts to give the land of one person to another for an inconsiderable sum. The former is liberally construed, the latter is strictly construed. The former was enacted for just such cases as the one at bar. It was enacted for void tax deeds, and not for valid tax deeds. A person holding under a valid tax deed has no need of such a statute. Only persons holding under void tax deeds need such a statute. The laws under whose provisions tax titles are created are usually construed strictly, and therefore we hold that the tax deed in this case is void. But laws enacted for the purpose of enforcing, in a fair and reasonable manner, the delinquent members of society to discharge that moral obligation resting upon them as well as upon others to bear their proportionate share of the public burdens, are always construed liberally, so as to promote their object."

In the case of *Belz v. Bird*, 31 Kas. 139, 144, 145, this court used the following language:

"It would seem that in all cases of void tax deeds, whatever may be the grounds upon which the deeds are held to be void, the holder of the tax deed, when defeated in an action of ejectment, whether he is the plaintiff or defendant, may recover the taxes which he has paid." (See also *Stetson v. Freeman*, 36 Kas. 608.)

The plaintiffs in error claim, first, that all the aforesaid taxes, state, county and school district, are void, for the reason that the property taxed was not assessed by the proper assessor; and they claim, second, that the school-district taxes are void

for the additional reason that the property taxed did not constitute any part of the territorial subdivision for which the taxes were levied, to wit, the city of Topeka, but was in law a part of another territorial subdivision, to wit, Topeka township. These are the only questions to be decided in this case. It appears that on April 15, 1875, and prior thereto, the land upon which the taxes were levied was a part of Topeka township, and not a part of the city of Topeka, but on that day the city of Topeka attempted, by an ordinance regularly passed by the mayor and council in pursuance of an act of the legislature regularly passed and approved on March 3, 1875, (Laws of 1875, ch. 73,) to take this land along with other land, into the corporate limits of the city of Topeka, and to make it a part of the city; and from that time on up to about October 7, 1884, this land was *in fact*, though not in law, within the corporate limits of the city of Topeka and a part of such city, when at that time it was decided by the supreme court of the state that such land was not within the corporate limits of the city, and that it formed no part of such city. (*City of Topeka v. Gillett*, 32 Kas. 431; same case, 4 Pac. Rep. 800.) The ground upon which this decision was made, and the only ground, was that the aforesaid act of the legislature, though in form general, was in fact special, and was therefore void, because it attempted to confer corporate power by a special act in contravention of § 1, article 12 of the constitution of the state. During that time, that is from April 15, 1875, up to October 7, 1884, the city of Topeka and the school district of Topeka had the absolute and exclusive control over the annexed territory for municipal and school purposes, and the same control, precisely, as they had over any territory belonging to the city of Topeka, except that John Ritchie and a few others, who represented the largest number of acres of land within the annexed territory, refused to recognize the validity of the aforesaid ordinance of annexation, and at all times claimed that the annexed territory did not constitute any part of the city of Topeka. The majority of the inhabitants, however, of that territory, as well as the people and the officers

of Topeka township, and the people and the officers of the city of Topeka, and of the school district of Topeka, and the public generally, recognized the validity of the aforesaid ordinance, or at least regarded the annexed territory as constituting a part of the city of Topeka, until it was decided otherwise by the courts in 1884. City taxes were levied by the city of Topeka upon this territory, and such taxes were generally paid by the inhabitants of the territory; school-district taxes were also levied by the board of education of the city of. Topeka upon this territory, and they were generally paid by the inhabitants of the territory. Sidewalks were built and maintained by order of the city of Topeka upon the supposed streets of the annexed territory, and assessments to pay for such sidewalks were levied by the city of Topeka, and were generally paid by the abutting property-owners. Both the water service and the fire service of the city of Topeka were extended by the city over this annexed territory. The children residing in the annexed territory attended the public schools of the city of Topeka. A school house was also built in this territory, and a school maintained therein by the board of education of the city of Topeka. The electors of that territory voted at the city elections, and at one time one of the electors of that territory was elected a member of the city council, and served as such. And while the city of Topeka and the school district of Topeka were exercising jurisdiction over this annexed territory, no other city or township or school district attempted to exercise the slightest jurisdiction or control over the same. During that time no township tax was levied upon this territory, and no school-district tax, except such taxes as were levied by the board of education of the city of Topeka; and no taxes of any kind were attempted to be collected from that territory except such as were computed upon the assessments made by the city assessors, and such as are now claimed to be illegal. Indeed, no assessment was made of any property in that territory except the aforesaid assessments made by the city assessors, which are now claimed to be illegal. John Ritchie, however, never paid any of his taxes levied against

him or upon his property in this territory, and never did any other act that would indicate that he considered the annexed territory as a part of the city of Topeka, but always resisted the claim that his property or any other property in that territory constituted any part of the city of Topeka or of the school district of the city of Topeka. We think from the facts found in the present case that the annexed territory was *de facto* a part of the city of Topeka, and a part of the school district of the city of Topeka from April 15, 1875, up to October 7, 1884. This did not so clearly appear under the facts as found in the case of *City of Topeka v. Gillett*, heretofore cited, as it now does under the facts found in this case. It did not appear in that case that the annexed territory was so universally recognized as a part of the city of Topeka as it now does; and yet if it had so appeared, still the decision in that case would have been, and should have been, precisely as it was. We think that by virtue of the foregoing facts, the city assessor of the city of Topeka became and was the assessor *de facto* for that territory, if such a thing could be possible, and we think it could. In this state, in the assessment of property for taxation, the main object is always to have a fair and reasonable assessment made, and it is not so material as to what particular officer makes it. In townships the assessment is generally made by the township trustee, who is *ex officio* the township assessor. In cities the assessment is usually made by a city assessor; and both the township trustee and the city assessor may have deputy assessors who may assess the property. Railroad property, both in cities and in townships, is assessed by a board of railroad assessors. (Tax Law, § 26.) And where property is omitted from the assessment roll, whether the property is in a city or in a township, the county clerk may assess the same, (Tax Law, §§ 18, 52, 53, 54, 70,) and the county board, as a board of equalization, may increase or diminish the assessment of any particular piece of property. (Tax Law, § 74.) Indeed, the substantial thing in all the assessments of property in this state is that the assessments shall be made by some officer, and that the assessments

shall be fair and reasonable; and all the assessments made in the present case were made by an officer exercising exclusive jurisdiction over that territory, and were found to be fair and reasonable by the trial court. We think this is sufficient to render the taxes valid for the purposes of the present case and under § 142 of the tax law. But this is not all: section 85 of the present tax law and § 74 of the prior tax law provide as follows:

"SEC. 85. All taxes shall be due on the first day of November of each year. A lien for all taxes shall attach to the real property subject to the same on the first day of November in the year in which such tax is levied, and such lien shall continue until such taxes and penalty, charges and interest which may have accrued thereon, shall be paid by the owner of the property, or other person liable to pay the same."

Observe the foregoing language: "A lien for all *taxes* shall attach to the real property *subject to the same.*" No reference is here made to any assessment. This means that whenever a tax is levied and the first day of the next November has arrived, a lien shall attach to all property subject to the tax, whether any assessment has yet been made or not. If no assessment has yet been made, the county clerk may make it afterward. (Tax Law, §§ 18, 52, 53, 54, 70.) Of course the amount of the lien cannot be ascertained until some assessment or valuation of the property is made, but the county clerk can make it at any time. It will be seen that the law is careful to prevent the escape from taxation of any person. All must bear their fair share of the public burdens; and no one is permitted to escape taxation merely because of some irregularity in the assessment or elsewhere. All must pay their taxes. For the purposes of this case it may be admitted that any taxes like the taxes in the present case would be held to be invalid in an action brought under § 253 of the civil code for the purpose of restraining the collection of such taxes by any one or more of the persons taxed, against the corporation or the officers attempting to collect the taxes; and it may also be admitted that any tax title founded upon any

such taxes, or upon any taxes based upon any such assessment as the ones that were made in the present case, would also be held to be void. A person who commences early under § 253 of the civil code to enjoin the collection of a supposed illegal tax is entitled to be favorably heard. Also, a person whose land is claimed for an inconsiderable sum of money paid for it, as a tax paid at a tax sale usually is when compared with the value of the land, is entitled to defeat the tax deed or tax title for comparatively a very small irregularity; but when a person stands by for years, knowing that his land is taxable, that it is taxed, and that only a reasonable tax is imposed upon it, refusing to pay his just taxes, the just demands of the public in the form of taxes, because of some irregularity that does not render the taxes any the less just than they would be if no irregularity had intervened, and until some innocent third person has invested his money by paying such taxes, is not entitled to any sympathy or encouragement from the courts or elsewhere. Section 142 of the tax law was enacted for just such persons and for just such cases. We think the arguments and authorities of the plaintiffs in error have but little force in proceedings like this under § 142 of the tax law, for nearly all their arguments and authorities have reference to tax deeds or tax titles, or to questions concerning the validity of the tax where such questions are raised directly between the wrongdoer, (that is, the corporation or officer attempting to enforce the questionable tax,) and the person wronged or to be wronged, (that is, the person whose property is supposed to be wrongfully taxed,) and not between the innocent third persons who have expended their money upon the faith of a state of things permitted to exist not only by the corporation or person attempting to enforce the tax, but also by the person taxed. And here we might say that John Ritchie, with those who felt the same as he did, had his remedy from the beginning to enjoin the officers of the city of Topeka from exercising jurisdiction over his property, and to enjoin the city of Topeka and its officers and the board of education or other officers from attempting to enforce the collection of any un-

warranted tax upon his property; and this he could have done before any tax sale was had, and before any innocent third person expended any money in the purchase of the lands at the public tax sale. His lands were taxable, and subject to state, county and school-district taxes, and he knew it, and he, as well as others, was morally bound to pay his just and fair proportion of these public charges. His lands were in the county, and the county had the right to tax them, and to receive the taxes, and he had no right to deprive the county of them. They were also in the state, and the state also had the right to tax them, and to receive the taxes, and he had no right to deprive the state of its taxes; and the only irregularity with regard to the state and the county taxes was the aforesaid irregular assessment. These lands were assessed by the city assessor, when it is claimed they should have been assessed by the township trustee of Topeka township. With reference to the school-district taxes it is urged that the annexed territory did not belong to the city of Topeka or to the school district of Topeka, but belonged to some other school district, and therefore that only such last-mentioned school district could lawfully tax the same for school purposes. But this territory was *in fact*, though not in law, a part of the school district of Topeka, and the board of education of the city of Topeka had in fact the absolute and exclusive control and jurisdiction over that territory as a school district, and this with the consent of such board and the consent of a majority of the inhabitants of the territory, and indeed with the consent of all other persons except John Ritchie and a few others. Is not this enough? A school district of a city is never a part of the city municipal corporation. It is merely a school district, and a distinct corporation from the city. (*Knowles v. Board of Education*, 33 Kas. 692, 701.) And territory may be attached to a city school district for school purposes, although the territory may not belong to the city as a municipal corporation, nor be within its limits. Topeka was a city of the second class up to the year 1881, and the statute governing in such cases reads as follows:

"Territory outside the city limits, but adjacent thereto, may be attached to such city for school purposes, upon application to the board of education of such city, by a majority of the electors of such adjacent territory; and upon such application being made to the board of education, they shall, if they deem it proper and to the best interests of the schools of said city and the territory seeking to be attached, issue an order attaching such territory to such city for school purposes, and to enter the same upon their journal; and such territory shall, from the date of such order, be and compose a part of such city for school purposes only; and the taxable property of such adjacent territory shall be subject to taxation, and shall bear its full proportion of all expenses incurred in the erection of school buildings, and in maintaining the schools of such city." (Laws of 1872, ch. 100, art. 5, § 99; Laws of 1876, ch. 122, art. 11, § 3; Comp. Laws of 1885, ch. 92, art. 11, § 3.)

This provision of the statute was complied with in this case in substance though not in form. The territory in dispute was originally incorporated into the city of Topeka, and therefore into the school district of the city of Topeka, by an ordinance void so far as the city of Topeka as a municipal corporation was concerned; but was it void so far as the school district of Topeka is concerned? (*Knowles v. Board of Education*, 33 Kas. 692.) Special acts relating to school districts may be valid, and the only ground upon which the aforesaid ordinance was held void was that it was based upon a special act. But conceding the ordinance to be void with reference to the school district as well as to the municipal corporation, still the board of education and the majority of the people of the annexed territory afterward ratified and confirmed the annexation attempted to be effected by it, by their voluntary acts, though not in the statutory form. In other words, the board of education and the people of the annexed territory made such annexed territory as much a part of the school district of the city of Topeka *in fact* though not in law, as it would or could have been if it had been annexed under a valid ordinance, or attached in the most formal manner under the foregoing statute. These acts of the board of education and the people of that territory made such territory a part *de facto*

of the school district of the city of Topeka, and hence as to the public in general and as to third persons in particular, the annexation or attachment of this territory to the school district of the city of Topeka must be considered as legal and valid when attacked collaterally, as in this case.

In the case of *School District v. The State*, 29 Kas. 57, it was held that bonds issued by a school district which was not a school district *de jure*, but only such *de facto*, and where the bonds had gone into the hands of innocent purchasers, were legal and valid. In the case of *Back v. Carpenter*, 29 Kas. 349, it was held that where assessments were made and taxes levied upon property in the city of Council Grove, and where other things were done by the city officers as though such city was a city of the second class, when in fact it was only a city of the second class *de facto* and not such *de jure*, all such acts were legal and valid as to third persons. (See also *Voss v. School District*, 18 Kas. 467; *Pape v. Capitol Bank*, 20 id. 440; *Watkins v. Inge*, 24 id. 612; *Morton v. Lee*, 28 id. 286; *The State v. Carroll*, 38 Conn. 449; *Petersilea v. Stone*, 119 Mass. 465.) In the case of *The State v. Carroll*, 38 Conn. 449, it was held as follows:

"An officer *de facto* is one whose acts, though not those of a lawful officer, the law upon principles of policy and justice will hold valid, so far as they involve the interests of the public and third persons, where the duties of the office were exercised: 1. Without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people without inquiry to submit or to invoke his action, supposing him to be the officer he assumed to be. 2. Under color of a known and valid appointment or election, but where the officer has failed to conform to some precedent requirement or condition, as to take an oath, give a bond, or the like. 3. Under color of a known election or appointment, void, because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect, being unknown to the public. 4. Under color of an election or appointment by or pursuant to a public, unconstitutional law, before the same is adjudged to be such."

The rules of law with respect to the validity of acts of corporations *de facto* are substantially the same as the rules of law are with reference to the acts of officers *de facto*.

We think that the court below did not err in holding that the state, county and school-district taxes paid by the plaintiff below, may be recovered in this action, and therefore its judgment will be affirmed.

JOHNSTON, J., concurring.

HORTON, C. J., not sitting, and not taking any part in the decision.