## THE LEWIS ACADEMY V. MRS. I. O. WILKINSON.

No. 15,678.   (100 Pac. 510.)

### SYLLABUS BY THE COURT.

TAXATION—*Invalid Tax Deed—Lien for Taxes.* Where the holder of a tax deed brings ejectment and is defeated he is entitled to a lien for the amount of taxes he has paid, notwithstanding his deed is based upon an assessment made separately of each of three contiguous lots comprising the property, when it should have been made upon the entire tract as a single description, owing to the fact that the three lots were owned by one person, devoted to a common use and occupied by improvements practically incapable of division along lot-lines.

Error from Sedgwick district court; DAVID SMYTH, judge *pro tem.* Opinion filed March 6, 1909. Affirmed.

*Henry C. Sluss,* for plaintiff in error.

*Kos Harris,* and *V. Harris,* for defendant in error.

The opinion of the court was delivered by

MASON, J.: Mrs. I. O. Wilkinson brought ejectment against the Lewis Academy for three contiguous city lots on which she held a tax deed. Her deed was held invalid as a conveyance, but she was given a lien on the property for the amount paid as taxes. The academy prosecutes error, and raises but a single question. The three lots, since a time prior to the accrual of any taxes here involved, have been owned by one person and used as one tract, two dwelling-houses having been con-

structed thereon, the front of each lying on one of the outside lots and its rear on the other, so that such manner of use was obvious. Notwithstanding this situation the property was assessed and sold as three distinct tracts, a separate value being assigned to the improvements on each lot as well as to the lot itself. The owner claims that the tax deed holder ought not to have been allowed any lien whatever for the reason that the assessment itself—the basis of the entire proceeding—was not merely irregular but absolutely void. The soundness of this contention is the one question presented.

Where two contiguous tracts of unequal value, owned by different persons, are assessed as one there is manifestly good ground for saying that there has in fact been no assessment of the property of either owner. The possible injurious effect of the separate valuation of the different parts of a single tract occupied by buildings practically incapable of any corresponding division is also obvious. In such case, however, there is an actual valuation of the property of the owner, and the difficulty results from the complications that might arise should tax deeds be issued to different persons for the several lots. The most that is claimed for the defect here complained of is that it is as radical as that of wrongfully assessing several tracts as one. In the brief of the plaintiff in error it is said, quoting from volume 1 of the third edition of Cooley on Taxation, at page 738:

"The authorities in general are imperative in holding that an unauthorized division of a tract in the assessment, which tract has no known legal subdivisions, is as fatal as an unauthorized grouping of distinct parcels would be."

In *Challiss v. Hekelnkaemper*, 14 Kan. 474, which was an action brought to set aside a tax deed, the question raised seems to have been substantially the same as that under consideration, except that there two lots

of unequal value and different ownership had been treated as a single tract—assessed, sold and deeded as such.   In an action to set aside the tax deed the owner of one of the lots contended that for the reason stated no lien was cast on his property, but that the whole tax was void.   The court said:

"It does not seem to us that the claim of the plaintiff can be sustained.   While a court of equity may assist a party to cast off an inequitable burden from his property, it will not assist him to remove that which is fair and just, or to avoid bearing his due share of the burdens and expenses of government.   Now the plaintiff, claiming that this tax is excessive, seeks to be relieved from it altogether.   He would not simply rectify the blunders of the officers, but he would make those blunders the means of his own profit.   Because too much is asked, he would not pay that which fairly and justly he ought to pay.   This a court of equity will not tolerate.   It appears from the unchallenged findings that the value of the adjacent lot was three times that of the one in controversy.   There is no pretense that the joint assessment was excessive, or the tax inequitable.   Clearly, therefore, as taxes are based upon value, the lot in controversy should have paid one-fourth, and only one-fourth, of the joint tax."   (Page 477.)

That this language was used in an action formally brought for the avowed purpose of obtaining equitable relief does not affect its relevancy here.   The statute (Gen. Stat. 1901, § 7681) providing for the repayment by the landowner of the taxes paid by the holder of an invalid tax deed was designed to compel the doing of substantial justice between the parties, and is necessarily administered upon equitable principles.   As was said in *Smith v. Smith,* 15 Kan. 290:

"This statute was enacted in the interest of equity and justice, and its provisions should be so construed as to promote justice.   It is wholly unlike that class of statutes which attempts to give the land of one person to another for an inconsiderable sum.   The former is liberally construed, the latter is strictly construed. The former was enacted for just such cases as the one at bar.   It was enacted for void tax deeds, and not for

valid tax deeds. A person holding under a valid tax deed has no need of such a statute. Only persons holding under void tax deeds need such a statute. The laws under whose provisions tax titles are created are usually construed strictly, and therefore we hold that the tax deed in this case is void. But laws enacted for the purpose of enforcing, in a fair and reasonable manner, the delinquent members of society to discharge that moral obligation resting upon them as well as upon others to bear their proportionate share of the public burdens are always construed liberally, so as to promote their object, and therefore we hold that before the plaintiff can recover his property he must pay to the defendant the taxes which he ought to have paid a long time ago to the public officers, and which the defendant has himself paid." (Page 295.)

And in *Russell v. Hudson,* 28 Kan. 99:

"Under the statutes of Kansas all taxes upon real property, with all proper penalties, charges and interest thereon, are liens upon such real property, from the time when they first accrue thereon until they are finally 'paid by the owner of the property, or other person liable to pay the same.' . . . These liens are not extinguished by any attempt made on the part of some third person to obtain a tax title upon the property; but they still continue to be liens upon the property until the owner, or some person for him, by full payment, discharges the same. These liens may be determined and declared by the district court in an action of ejectment, whether the action is commenced by the party holding the tax deeds, or by the party claiming adversely thereto. [Citing cases.] These liens are in their nature equitable as well as legal, and therefore we think they should be determined and declared upon equitable principles. All the statutes with reference to the subject would seem to indicate this. Of course they are sometimes determined, declared and enforced in actions of ejectment; but an action of ejectment is in this state an equitable action as well as a legal action." (Page 100.)

In *Ritchie v. Mulvane,* 39 Kan. 241, 17 Pac. 830, reasons are thus stated why less favorable treatment

should be accorded the landowner in a proceeding of this character than in injunction:

"A person who commences early under section 253 of the civil code to enjoin the collection of a supposed illegal tax is entitled to be favorably heard. Also, a person whose land is claimed for an inconsiderable sum of money paid for it, as a tax paid at a tax sale usually is when compared with the value of the land, is entitled to defeat the tax deed or tax title for comparatively a very small irregularity; but when a person stands by for years, knowing that his land is taxable, that it is taxed, and that only a reasonable tax is imposed upon it, refusing to pay his just taxes, the just demands of the public in the form of taxes, because of some irregularity that does not render the taxes any the less just than they would be if no irregularity had intervened, and until some innocent third person has invested his money by paying such taxes, is not entitled to any sympathy or encouragement from the courts or elsewhere. Section 142 of the tax law was enacted for just such persons and for just such cases." (Page 253.)

In the same case attention is called to the fact that the lien for taxes does not depend upon a prior assessment, valid or otherwise, the court saying:

"Observe the . . . language: 'A lien for all taxes shall attach to the real property subject to the same.' No reference is here made to any assessment. This means that whenever a tax is levied and the first day of the next November has arrived, a lien shall attach to all property subject to the tax, whether any assessment has yet been made or not." (Page 252.)

The principles established by these cases, which are in harmony with the other decisions on the subject, require the affirmance of the judgment.