S. E. BEACH, *et al.*, v. THOMAS LEAHY, *as Treasurer, &c.*

1. SPECIAL LAWS; *School Districts; Corporate Powers; Constitutional Law.* Chapter 35 of the laws of 1871, entitled "An act authorizing School District No. 2, Neosho county, Kansas, to issue bonds to build a school-house," does not conflict with section 17 of article 2, nor with section 1 of article 12 of the state constitution, and is therefore not unconstitutional.

2. ———— Among "public corporations" only corporations proper are included within the scope of article 12 of the state constitution. A school district is only a *quasi* corporation, and is not covered by said article twelve.

*Error from Neosho District Court.*

INJUNCTION, brought by *Beach* and six others, residents, electors and taxpayers in School District No. 2, Neosho county, to restrain *Leahy,* as county treasurer, from collecting certain taxes levied on property of the plaintiffs. The record shows that the board of said district had issued the bonds of said district to the amount of $15,000 for the purpose of erecting a school-house in said district; that said bonds were issued in accordance with the terms and provisions of chapter 35 of the laws of 1871, and had been negotiated as authorized by said act; that to pay the interest on said bonds payable in 1872 the school board of said district had levied a tax on the taxable property of the taxpayers of said district, which tax was duly certified to the county clerk and duly entered upon the assessment rolls for 1871, and that said assessment rolls were in the hands of defendant *Leahy,* as county treasurer, etc. Plaintiffs claimed and averred that said chapter 35 was a special act, and unconstitutional, and said bonds were void. Defendant *Leahy* demurred. The district court at the April Term 1872 sustained the demurrer, and gave judgment in favor of the defendant for costs. Plaintiffs bring the case here by petition in error.

*Stillwell & Baylies,* for plaintiffs in error:

1. The act entitled "An act authorizing School District No. 2 in Neosho county, Kansas, to issue bonds to build a school-house," approved February 22d, 1871, (ch. 35, Laws of 1871, p. 74,) is in conflict with §17, art. 2, and §1, art. 12, of the constitution of the state, and is void. It is a "special law," enacted where a general law could be made applicable, and at a time when a general law providing for the issuance of bonds by school districts was in force. (See ch. 93, Gen. Stat., 1868, p. 938.) The discretion vested in the legislature to determine the necessity for special laws is a reasonable discretion; and if it is abused the courts will interfere. *The State ex rel. Johnson v. Hitchcock,* 1 Kas., 178; *Ex parte, Pgitz,* 9 Iowa, 30. The act in question here is not analagous to the one considered in the case in 1 Kas. That was an act of special legislation upon a subject and in a case not provided for by general law, and to which it was doubtful whether a general law could be made applicable.

2. As to statutes which dispense in favor of some particular individual with the general rules governing similar cases, see Sedg. on Stat. and Const. Law, 177; *Comm'rs of Shawnee Co. v. Carter,* 2 Kas., 115. Such acts do not come within the rightful exercise of legislative power. The act under consideration dispenses with School District No. 2 Neosho county complying with some of the most important provisions of law applicable to other school districts in issuing bonds for the purpose of building school-houses. It dispenses with the presentation to the board of a petition signed by one-third of the qualified voters of the district for an election to vote on the proposition to issue such bonds. It changes the manner of giving notice of the election. It requires the issuance of the bonds upon a vote in their favor of a bare majority, instead of two-thirds of the legal electors of the district; and it authorizes the issuance of bonds to an amount much larger than is authorized by the general law; (see chap. 93, Gen.

Stat., 1868, p. 938, and Laws of 1871, p. 74;) and in these respects it is in direct conflict with the rule above cited.

3. School districts are corporations; Gen. Stat., 1868, § 24, p. 920. They are created under general laws; ch. 92, Gen. Stat., 1868. The power to vote bonds to erect school-houses, the manner in which such power shall be exercised, and the amount of bonds that may be issued, are prescribed and clearly defined and regulated by general law, (ch. 93, Gen. Stat.;) and any act of the legislature that attempts to confer upon a school district authority to issue its bonds for a larger amount than other districts similarly situated, or that seeks to release it from compliance with any of the provisions of law in issuing its bonds, that must be complied with by other districts to render their bonds valid, is a special act conferring corporate powers, is in direct conflict with the constitutional provision above referred to, and is void. 4 Kas., 124; 5 Kas., 603; 9 Iowa, 30, 104.

*Carpenter & Jones*, and *W. A. Johnson*, for defendant in error:

1. The only question presented by this case is as to the constitutionality and validity of ch. 35 of the laws of 1871, page 74. The general scope and purpose of said act is to authorize School District No. 2, Neosho county, to issue bonds for the purpose of building a school house. It is admitted by the petition of plaintiffs that the proceedings on the part of the school board of said district in ordering said election, conducting the same, declaring the result and issuing the bonds, are all under and by virtue of said act, and are all in strict conformity therewith. But it is said that such proceedings are void, because said act is in conflict with § 17, art. 2, of the constitution. Said § 17 does not prohibit the legislature from passing a special law, but only limits its action, and leaves the matter as to whether a general law can be made applicable, to the sound discretion of the legislature. 1 Kas., 178; 4 Kas., 141. A court will declare a statute void only when it violates the constitution, clearly, palpably, plainly, and in such a manner as to leave no doubt or uncer-

3—11 KAS.

tainty in the mind of the court. 1 Kas., 27; 15 Iowa, 139, 347; 16 Wis., 398; 17 Wis., 681; 1 Am. Rep., 242.

2. If the court shall declare the act under consideration void, it will affect the validity of a large number of bonds throughout the entire state, issued under similar enactments. At every session of the legislature just such laws as the one in question have been passed. The uniform interpretation of the constitution by many of the ablest attorneys and legislators of our state has been in favor of this species of enactments. This is the legislative construction of the constitution, which should not be disregarded by the court, and is at least entitled to respect.

The opinion of the court was delivered by

BREWER, J.: The only question presented by this case is as to the constitutionality and validity of the act of the legislature of this state entitled "An act authorizing School District No. 2, Neosho county, Kansas, to issue bonds to build a school-house," approved February 22, 1871. (Laws of 1871, page 74.) It is claimed that such act conflicts with two sections of the constitution, viz., § 17 of art. 2, and § 1 of art. 12. The former provides that "In all cases where a general law can be made applicable no special law shall be enacted;" and the latter forbids the legislature to pass "any special act conferring corporate powers."

The attention of this court was challenged at an early day by § 17 above quoted, and its scope and effect determined. It was held that such section was not to be literally and strictly construed, and that the mere fact that certain results could be accomplished by a general law did not necessarily avoid a special law passed to effect them. It was said that it left "a discretion to the legislature," that "the legislature must determine whether their purpose can or cannot be expediently accomplished by a general law." *State v. Hitchcock,* 1 Kas., 178. Under this construction, and we have no disposition to change it, it is impossible to hold the act to be in conflict with the section. It may be conceded that this is a special

law—that it authorizes the issue of bonds in a manner and upon conditions different from those prescribed by the general statute therefor. It is evident also that the result could be accomplished by a general law, or, in the words of the constitution, that a general law could be made applicable—for a general law is on the statute book under which great numbers of our school districts have issued bonds. Why this distinction was made we do not know, and there is nothing in the record to enlighten us thereon. We may imagine many reasons, but it is useless to speculate. It is enough, in the absence of any showing as to the facts, that we can see that there may have been good and sufficient reasons. The poverty of the district, the want of school accommodations, the hostility of large numbers of the inhabitants to common-school education, may all have furnished reasons more or less strong. On the other hand, we see nothing in the act—and we have nothing else to examine—to indicate any abuse of the legislative discretion. Ample protection was secured by the law. An election was required before any bonds could be issued; sufficient notice of the time and place of election provided for, and a majority vote was necessary. The bonds, if voted, were to be used exclusively for the purpose of erecting suitable school buildings. A limit was fixed to the amount of bonds, the rate per cent., the time of maturity, and the price at which they might be negotiated; and this limit, for aught that appears, was in all instances reasonable. We have no hesitation therefore in holding that this act does not conflict with said section seventeen.

Does it conflict with § 1 of art. 12? The question here raised is one of more difficulty, and one in the investigation of which there is little in the briefs of counsel to assist us. of ch. 92 of the Gen. Stat. provides that "every district organized in pursuance of this act shall be a *body corporate*, and shall possess the usual powers of a corporation for public purposes." The act under discussion is a special act conferring powers upon this body corporate which it did not possess before. It seems

therefore to conflict with the very letter of the section. A critical examination however leads us to the conclusion that this conflict is seeming and not real, or, perhaps more correctly, leaves our minds so doubtful of the existence of any conflict that according to well-settled rules of construction and decision we must pronounce the law not unconstitutional. *State ex rel. Crawford v. Robinson,* 1 Kas., 18; *Atchison v. Bartholow,* 4 Kas., 124; *Leavenworth County v. Miller,* 7 Kas., 498. Art. 12, in which this section is found, is entitled "corporations," and wholly devoted to provisions concerning them. As to all organizations covered by its terms its provisions are absolute, and this section binding. No corporate powers can be given to them by special act. The question is, whether school districts are corporations within the meaning of the term as used in this article. Cities, towns, and villages, municipal corporations proper, are included. This has been already decided in this court: *City of Atchison v. Bartholow,* 4 Kas., 124; *City of Wyandotte v. Wood,* 5 Kas., 603. See also the case of *The State, ex rel., v. The City of Cincinnati,* 20 Ohio St., 18, in which the supreme court of Ohio placed a similar construction on a like provision of their constitution. Indeed, § 5 of this article indicates clearly such a construction. It reads, "Provision shall be made by general law for the organization of cities, towns, and villages." Now this section seems intended to limit the reach of this article in the direction of political organizations of the state, as § 6 does in the direction of the individual. That section says "The term corporation as used in this article shall include all associations and joint-stock companies having powers and privileges not possessed by individuals and partnerships." This is evidently not reaching towards nor aiming at political organizations, public corporations, but private associations, individual organizations. It seeks to prevent the granting of the peculiar privileges and powers of corporations to any gathering of individuals, whether called corporation, association, or stock company. It calls everything above a partnership a corporation, and forbids any special act conferring powers. It

places the lower limit, not the higher. On the other hand, in order that there might be no question whether this article was intended for other than private corporations, section five names certain public corporations to which its provisions extend. It was probably well that these were named, to avoid question, for all the sections other than the fifth have reference, principally at least, to private corporations. Yet, as these are corporations proper, there would be weighty reasons for holding them included, even though not in terms named. But with reference to counties, townships, and school districts, the case is different. True, they are called in the statute bodies corporate: Gen. Stat., p. 253, § 1; p. 1082, § 1; p. 920, § 24. Yet they are denominated in the books, and known to the law, as *quasi corporations* rather than as corporations proper. They possess some corporate functions and attributes, but they are primarily political subdivisions, agencies in the administration of civil government, and their corporate functions are granted to enable them more readily to perform their public duties. The legislature have created the regents of the agricultural college, and the regents of the state university, bodies corporate, and given them certain corporate powers; (Gen. Stat., p. 75, § 3; p. 1100, § 6;) yet are they thereby inhibited from special legislation concerning them? Giving corporate capacity to certain agencies in the administration of civil government is not the creation of such an organization as was sought to be protected by article 12 of the constitution. This distinction between *quasi* corporations and corporations proper, is no new thing nor of recent recognition. In *Harris v. School District*, 8 Foster, (28 N. H.,) 61, Bell, J., says: "School districts are *quasi* corporations of the most limited powers known to the laws. They have no powers derived from usage. They have the powers expressly granted to them, and such implied powers as are necessary to enable them to perform their duties, and no more." In the case of *School District v. Wood*, 13 Mass., 192, Ch. J. Parker remarks concerning school districts: "that they are not bodies

politic and corporate with the general power of corporations, must be admitted; and the reasoning advanced to show their defect of power, is conclusive." In *Riddle v. The Proprietors, &c.,* 7 Mass., 169, Ch. J. Parsons says: "We distinguish between proper aggregate corporations and the inhabitants of any district who are by statute invested with particular powers without their consent. These are in the books sometimes called *quasi* corporations. Of this description are counties and hundreds in England, and counties, towns, etc., in this state." In the case of *Comm'rs of Hamilton County v. Mighels,* 7 Ohio St., 109, in which an attempt was made to hold the county responsible for damages for injury resulting to a private party by the negligence of county commissioners in the discharge of their official functions, the question was examined at great length by Brinkerhoff, J., and the distinction between municipal corporations proper, and *quasi* corporations, clearly presented. He thus sums it up: "A municipal corporation proper is created mainly for the interest, advantage and convenience of the locality and its people. A county organization is created almost exclusively with a view to the policy of the state at large for purposes of political organization and civil administration in matters of finance, of education, of provision for the poor, of military organization, of the means of travel and transport, and especially for the general administration of justice." Dillon, in his late and elaborate treatise on Municipal Corporations, after noticing the distinction draws attention to one fact which will help to make it clearer: "The primary and fundamental idea," he says, "of a municipal corporation is an agency to regulate and administer the internal concerns of a locality in matters peculiar to the place incorporated, and not common to the state or people at large. But it is the constant practice of the states to make use of the incorporated instrumentality, or of its officers, to exercise powers, perform duties, and execute functions not strictly or properly local or municipal in their nature, but which are in fact state powers exercised by local officers

within defined territorial limits. In theory, the two classes of powers are distinct; but the line which separates the one from the other is often very difficult to trace. The point may be illustrated from the English law: If the king incorporate a town, its officers will have no implied power as conservators or justices of the peace; express words are necessary to confer this power, and when they act in the latter capacity, it is not because they are corporate officers, but because of powers expressly annexed to their corporate offices; and the two capacities remain distinct, although united in the same person." See also sustaining these views, *Russell v. Men of Devon*, 2 Dumford & East, 667; *Ward v. County of Hartford*, 12 Conn., 404; *Comm'rs of Gallia County v. Halcomb*, 7 Ohio St., 232; *Wilson v. School District*, 32 N. H., 126; *Eastman v. Meredith*, 36 N. H., 284; *Hedges v. County of Madison*, 1 Gilman, 567; *Mower v. Inhabitants of Leicester*, 9 Mass., 247; *Freeholders of Sussex v. Strader*, 3 Harrison, (N. J.,) 108; *Morey v. Town of Newfane*, 8 Barb., 645; *Soper v. Henry County*, 26 Iowa, 264. The mere fact that these organizations are declared in the statute to be bodies corporate, has little weight. We look behind the name to the thing named. Its character, its relations, and its functions determine its position, and not the mere title under which it passes. In the last five cases cited the organizations were declared in the statute creating them to be bodies corporate, yet this made no difference in the rule. The conclusion to which these investigations have led us is, that among public corporations only corporations proper are included within the scope of article 12 of the state constitution, and that a school district is only a *quasi* corporation, and not covered by its provisions. The act of February 22d 1871 therefore, not conflicting with either section of the constitution, must be held constitutional. The judgment of the district court will be affirmed.

All the Justices concurring.