JAMES FREELAND *et al.* v. S. H. STILLMAN *et al.*

SCHOOL-DISTRICT BONDS — *Contest of Election.* The term "municipal corporation," as used in chapter 79 of the Laws of 1871, does not embrace school districts; and a school-district election to vote bonds cannot be contested at the instance of an aggrieved elector by any of the proceedings provided for in that act.

*Error from Atchison District Court.*

PROCEEDING by *S. H. Stillman, E. R. Langworthy, B. O. Burdick* and *A. P. Stillman* against *James Freeland,* director, *Albert Hamm,* clerk, and *William Meyer,* treasurer, respectively, of School District No. 73, Atchison county, and *Charles H. Krebs,* clerk of said county, to contest a certain election. On a judgment for plaintiffs, at the September term, 1891, defendants bring error.

*J. T. Allensworth,* for plaintiffs in error:

1. The first error committed by the court below was in its refusal to sustain the demurrer to the petition.

The restraining order was granted by Judge Crozier, of the Leavenworth district court, and as judge of that court. He did not act in the capacity of judge of the district court of Atchison county, nor as judge *pro tem.* thereof. If the section of the statutes (2777, Gen. Stat. of 1889) has any force at all, it simply authorizes a plaintiff, in a case properly brought under its provisions, to request the district judge of any other county to come into the county where the suit is begun, and there grant the "temporary injunction" as the acting judge of such county. See, also, § 1 of art. 3 of the constitution of Kansas.

If the plaintiffs below had authority to prosecute this action, it was only by virtue of section 2772, General Statutes of 1889. It is there provided that whenever any elector of a "county, township or municipal corporation" shall consider himself aggrieved, he may bring suit, etc. If a school dis-

trict is not a "municipal corporation," then the plaintiffs cannot maintain this action.

The statute, by enumerating "county," "township," and "municipal corporations," intended to exclude school districts. That a school district is not a "municipal corporation," and is only a *quasi* corporation, is no longer an open question in this state, and it is not deemed necessary to argue this proposition further, for upon this point alone this case should be reversed. *Beach v. Leahy*, 11 Kas. 23; *The State v. County of Pawnee*, 12 id. 439; *Eikenberry v. Bazaar Township*, 22 id. 561; *Marion County v. Riggs*, 24 id. 257; *School District v. Shadduck*, 25 id. 467.

2. For the reasons above stated, the court should have sustained the objection of the defendants below to the introduction of testimony under the petition.

3. It was claimed and alleged by plaintiffs in the court below, that the defendants committed a fraud on them by calling the election on Saturday, that being their day of rest and for worship, and that thereby the majority of the voters in the district were disfranchised. Aside from the mere fact that the district board selected Saturday for holding the election, the record entirely fails to show any other evidence of fraud. Indeed, although the plaintiffs below claimed in their petition that said school district was not legally created; that the school-house site was not lawfully selected; that the directors were not properly elected, and that they were mere pretenders, yet it was conceded on the trial that such questions would not be raised in this action. The questions, therefore, to be considered are those only pertaining to the election. That the organization of said school district could not be questioned by plaintiffs below, see *A. T. & S. F. Rld. Co. v. Wilson*, 33 Kas. 223. The law under which this action was begun (Laws of 1871, chapter 79) authorizes "any elector or electors" of "any county, township, or municipal corporation," when he considers "himself," or they consider "themselves" aggrieved by the result of any election," . . . "such election may be contested in the district court of the proper

county, as hereinafter provided." It could not, with reason, be claimed that the plaintiffs below brought this suit pretending to represent the interest of the other electors of the district. Only a public officer could do that. The act referred to was intended to permit an elector of the "county, township, or municipal corporation" to sue for himself, and in doing so he could represent only his own interests. If the other electors of the district had felt themselves "aggrieved," the same privilege was theirs also. This character of action must be prosecuted in the name of the real party in interest. Admitting for the argument of this claim that the proof sustains it, they had actual notice of the time and place designated for the holding of this election, which renders any defect in the constructive notice entirely immaterial. *Light v. The State, ex rel.*, 14 Kas. 489; *County Seat of Linn Co.*, 15 id. 500; *The State, ex rel., v. Comm'rs of Sherman Co.*, 39 id. 293.

4. A further contention of plaintiffs below was that the law governing elections for school-district bonds (sec. 195, ch. 92, Comp. Laws of 1885) provides that "no such bonds shall be issued until, at an election called for that purpose, the question shall have been submitted to the qualified electors of the district, and a majority of all the qualified electors of the district shall have declared by their ballots in favor of issuing the same," and that, since only 18 votes were cast, and only 13 of those favored the proposition, the requisite "majority of all the qualified electors of the district" did not declare in favor of issuing the said bonds. This court has already spoken upon the meaning of such a statute, and is supported by the weight of authority. Upon this point it is only necessary to cite the authorities: *County Seat of Linn Co.*, 15 Kas. 500; *Comm'rs of Marion Co. v. Winkle*, 29 id. 40, 41; *Prohibitory-Amendment Cases*, 24 id. 721; *Walker v. Oswald*, 11 Atl. Rep. 711; *The State, ex rel., v. Echols*, 41 Kas. 1; *Cass County v. Johnson*, 95 U. S. 360.

5. It is claimed that plaintiffs in error, although doing that which the law authorized and required in holding their meeting and calling the election for just 10 days from the

time the petition was presented to them — in the performance of their duty strictly under the law—were yet guilty of fraud, in fixing said election for Saturday. If there had been a statute forbidding the calling of an election for that purpose on Saturday, out of regard for Sabbatarians, quite another proposition would be presented. Saturday never was a holiday, and can only be made so by statute. The legislature has declared it such for some purposes, but without any effect whatever on the acts of these plaintiffs in error in the case at bar. It is not for the court or counsel to say what the law should be, but to deal with the law as it is.

The character of fraud sought to be shown in this case is that on a statute. Fraud on a statute only occurs when some of its provisions have been evaded. Rapalje's Law Dict. No evasion of any statute has been shown in this case; hence there is no fraud. The question of intention is wholly immaterial. The directors are statutory officers. They are simply public agents; their duties are purely ministerial, and in no sense judicial. If they had the power to fix the time for holding the election beyond ten days, they had the power to refuse to fix any day. This is not the purpose of the law. *Tucker v. White,* 124 Mass. 344.

*C. D. Walker,* and *H. M. Jackson,* for defendants in error :

1. As to the first error complained of by the plaintiffs in error: The reasoning is, that because the restraining order was void for want of authority of Judge Crozier to make the same, the court where the cause was instituted had no jurisdiction to hear, try or determine the controversy. Judge Crozier saw fit to issue only a temporary restraining order, under § 240 of the code, and set the hearing for the temporary injunction for September 15, at 1 o'clock P. M., in the district court of Atchison county, notice thereof to be served upon said defendants.

On said day the plaintiffs in error and the defendants in error appeared, and by agreement the hearing for a temporary injunction was passed from time to time until December 28,

and by agreement of parties the temporary restraining order theretofore granted was to remain in full force and until the further order of the court. And on that day, by agreement of parties, the case was placed on the docket and set down for final hearing on its merits. By this agreement this order became the order of the district court, and all objections to this irregularity, if there were any, were undoubtedly waived.

It is also contended in support of this proposition, that the plaintiffs had no legal capacity to sue; that the legislature only intended to give to the electors of counties, townships and corporations strictly municipal the right to contest an election for the issuing of bonds or loaning the credit, under § 2772, Gen. Stat. of 1889. The language of an act should be construed in view of its title and lawful purposes. Suth., Stat. Const., §§ 210, 211; see also §§ 212, 217–219. In *The People v. Utica Insurance Co.*, 15 Johns. 358, 380, the court say :

"A thing which is within the intention of the makers of the statute is as much within the statute as if it were within the letter; and a thing which is within the letter of the statute is not within the statute unless it be within the intention of the makers."

To like effect are *Jackson v. Collins*, 3 How. 89; *Crocker v. Crane*, 21 Wend. 211.

A mere change in the phraseology of the statute will not be deemed to alter the letter, unless it evidently appears that such was the legislative intent. *Case of Yates*, 4 Johns. 318–359; *Matter of Brown*, 21 Wend. 316; *Theriat v. Hart*, 2 Hill, 380; *Cannon v. Vaughn*, 12 Tex. 399.

This court has followed the same rule in the *City of Emporia v. Norton*, 16 Kas. 236–239, and there further says of the determining the intent: "We may properly look to the purposes to be accomplished; the necessity and effect of the enactments under the different constructions suggested."

To the same effect is the opinion in *Prohibitory-Amendment Cases*, 24 Kas. 716, 719. See also Suth., Stat. Const., §§ 245–256.

The plaintiffs in error, in support of their proposition, cite *Beach v. Leahy*, 11 Kas. 23; *Eikenberry v. Bazaar Township*, 22 id. 561; *Marion County v. Riggs*, 24 id. 257. None of the cases cited by the plaintiffs in error shed any light on the question as to whether the legislature, in the statute under consideration, intended to use the words "municipal corporation" in their strict sense, or in the broader sense, and give no reason why, as used in this statute, it should not include school districts. See *Beyer v. Reed*, 18 Kas. 86.

A municipal corporation, in its broadest sense, is a body politic, such as a state, and each of the governmental subdivisions of the state, such as counties, parishes, townships, hundreds, New England towns and school districts, as well as cities and incorporated towns, villages, and boroughs. Every one of these is properly susceptible of the general appellation. 15 Am. & Eng. Encyc. of Law, 953, and cases cited under note 1. And it seems that it must have been used in this sense in the statute under consideration. In Iowa a school district has been held to be a political or municipal corporation within the meaning of art. 2, § 3, of the constitution of that state, inhibiting such corporations from incurring indebtedness to an amount exceeding 5 per cent. of the taxable property of the corporation. *Winspier v. Holman*, 37 Iowa, 542; *Curry v. District*, 62 id. 102; *Clark v. Thompson*, 37 id. 536; *School District v. Williams*, 38 Ark. 454; *Mosher v. School District*, 44 Iowa, 123; *Harris v. School District*, 28 N. H. 58; *School District v. Wood*, 13 Mass. 193.

2. There are but two qualifications necessary to authorize a private person to commence the action. He need not be a tax-payer; he need not be a freeholder; he need not be a householder; but he must be an elector, and consider himself aggrieved. Sec. 5585, Gen. Stat. of 1889. With these qualifications, he has the right to institute the action and contest the election, and, as part of the remedy, to enjoin the execution and sale of the bonds. The defendants below had no more right to question the grounds upon which the plaintiffs consider themselves aggrieved than the mortgagor has to

question the grounds upon which a mortgagee deems himself insecure. The only question at all material in this case is, whether the electors did, in fact, consider themselves aggrieved. *Werner v. Bergman*, 28 Kas. 65.

3. The election was fraudulent. The pretended notices were fraudulent. While an elector having actual notice might not be heard to complain of the result of the election, so far as such election affected him, it would not take the place of jurisdictional notice, or prevent an elector having notice from contesting the validity of the election. *George v. Oxford Township*, 16 Kas. 72; *Jones v. The State*, 1 id. 273; *Gossard v. Vaught*, 10 id. 162; *Wood v. Bartling*, 16 id. 109; *The State, ex rel., v. Echols*, 41 id. 1.

Where the managers of an election are clearly shown to have committed fraud in the conduct of the election, the counting or returning of the votes, it is fatal to the election. McCr., Elect., §§ 339, 340, 541, 542, 543; *Russell v. The State*, 11 Kas. 323; *Jones v. Caldwell*, 21 id. 187; Cooley, Const. Lim., 618; *Tarbox v. Sughrue*, 36 Kas. 225; *Blue v. Peters*, 40 id. 701.

4. As the law requires notices to be posted in five of the most public places in the district, and as only four were posted therein, the law in that respect was not complied with. And as the posting was on the 26th day of August, and the election on September 5, by excluding the first and last days, we would have but nine clear days. But as this court has expressed a contrary opinion in *Northrop v. Cooper*, 23 Kas. 432, and *Warner v. Bucher*, 24 Kas. 479, we submit that the object of the law in such notices is to give the elector ample opportunity to know and consider how he shall vote on the proposition to be submitted; and, although the law does not take notice of fractions of a day, it seems to us in this case, where the evidence is so clear that these notices were not posted until 10 or 11 o'clock on the night of August 26, that that day should be excluded; and, under the authority of *Northrop v. Cooper*, 23 Kas. 432, the day of election is to be excluded.

5. The proposition was not adopted by a majority vote. There were 56 or 57 voters in the district. Eighteen votes only were cast—13 for the bonds, and 5 against. The language of the statute under which this action is brought is materially different from that of other cases of contested election which have been presented to and been determined by this court, and different from those cited by plaintiffs in error. Upon the language of this statute, and the reasons given in many of the cases upholding elections by the rule of the majority of the votes cast, we insist that this election cannot be sustained.

Referring to the presumption that all the voters voting at an election were all the legal voters of a certain voting precinct or district, or that those who did not see fit to vote acquiesced in the action of those who did vote, McCrary on Elections says:

"This doctrine, however, must be taken with some qualification. If, for example, the election is held under such circumstances as to preclude the possibility that a majority of the persons entitled to vote could have had the opportunity to do so, it is void, although held at the time and place provided by law." McCr., Elect., 3d ed., § 134.

The true rule, as laid down by McCrary on Elections, 3d ed., § 135, is as follows:

"That if the opportunity to vote is given to all alike, and if those who abstain from voting do so from their own fault or negligence, then those who do attend and vote have a right to decide the result; but in a case where those who fail to vote constitute a large proportion of the voting population, and where they did not have the opportunity to vote, there can be no valid election."

Was not this election held under such circumstances as to preclude the possibility that a majority of the persons entitled to vote could have had the opportunity to do so? In other words, was there a fair opportunity given to all alike to vote; and was there not a large majority of the voting population of District No. 73 who did not have an opportunity to vote? The plaintiffs in error try to shield themselves

by saying that they called it on a legal day; and yet each and every plaintiff in error admitted in his testimony below that he knew that a majority of that district observed Saturday as the Sabbath, and well knew that they could have placed no stronger barrier around the polls on September 5, 1891, than the religious faith of these Sabbatarians. It is a matter of common knowledge, that for 25 years the religion of the Seventh-day Baptists located in that district has been respected in the calling of public meetings, political primaries and conventions, and the law enacted to protect them from the trial of causes or the service of writs on the day they observe as Sabbath. Gen. Stat. of 1889, §§ 5532, 5533.

This was an attempt to disfranchise them for their religious belief. In what sense can it be said that the Sabbatarians who did not vote are to be presumed to have acquiesced, when they did not have the opportunity to vote? Acquiescence presumes liberty to protest. In this instance that liberty did not exist. See *Case of Beach*, 1 Bart. 395; see, also, pp. 426, 459, 460, 464, 468.

The opinion of the court was delivered by

JOHNSTON, J.: This was a proceeding to contest an election held for the purpose of voting bonds with which to build a school-house in District No. 73 of Atchison county, Kansas. It was brought by four electors of the district against the officers, and in their petition they allege that the district was illegally organized, and that the election held to vote bonds was unlawful, for the reason that the notice given of the election was not such as required by statute, and that it was fraudulently called and held on Saturday, the 5th day of September, 1891, when it was represented to the petitioners when their signatures were obtained that an election would be called for Monday, September 7, 1891, and that a large majority of the electors of the district were persons of the religious faith peculiar to the Seventh-day Baptist church, who observed Saturday as their Sabbath, and who could not conscientiously attend to secular duties on Saturday, and that the pretended election

was purposely called for Saturday to prevent these electors, the most of whom were opposed to the bonds, from participating in the election; and it was further alleged, that the proposition to issue bonds did not receive the affirmative vote of a majority of the electors in the district. The officers of the district answered that the district was legally organized; that the election was properly called and legally held, after due notice had been given. They denied the charges of fraud, and challenged the right of the plaintiffs in the action to maintain the same. The plaintiffs below, finding that the judge of the district court of Atchison county was absent from the district, applied to the judge of the district court of Leavenworth county to grant a temporary injunction, who granted them a restraining order until the judge of the district court of Atchison county could hear the application for the temporary injunction. Afterward the parties appeared before the judge of the district court of Atchison county and continued the hearing for the temporary injunction from time to time, and agreed that the restraining order should remain in force until the final trial and judgment, at which time a perpetual injunction was granted. It is now contended that the restraining order granted by the judge of the district court of Leavenworth county is without force or validity, for the reason that it was granted outside of Atchison county, and outside of the district in which the action was pending. This objection, however material it might have been if seasonably made, is no longer important or available to the plaintiffs in error. It appears that they recognized the order as valid, and agreed that it should remain in force until the final hearing and judgment in the case. Then, again, the restraining order, which seems to have been treated as a temporary injunction, has performed its office, and the permanent injunction having been granted, it is too late to raise objections against the regularity of the steps taken in obtaining the temporary restraining order.

The right of the plaintiffs below, who describe themselves as electors of the district, to prosecute this action is the im-

portant question presented for decision. It is conceded that they have no special or peculiar interest in the controversy more than is possessed by other electors and tax-payers in the district, and their right to maintain the action is based solely upon the provisions of ¶ 2772 of the General Statutes of 1889. It provides for contesting certain elections at the instance of aggrieved electors by special proceedings in the district court. It is limited in its application, however, to elections held in "county, township, or municipal corporations," and, in our opinion, it furnishes no authority for an elector to contest an election held in a school district. Although a school district possesses corporate capacity, and is declared in the statutes to be a body corporate, it does not fall within the definition of a municipal corporation. A school district belongs in the same class as counties and townships, which "are denominated in the books and known to the law as *quasi* corporations, rather than as corporations proper. They possess some corporate functions and attributes, but they are primarily political subdivisions — agencies in the administration of civil government — and their corporate functions are granted to enable them more readily to perform their public duties." (*Beach v. Leahy*, 11 Kas. 23.) Cities, towns and villages are municipal corporations proper, and the distinction between municipal corporations and *quasi* corporations is clearly pointed out in the case just cited. (See, also, *Eikenberry v. Township of Bazaar*, 22 Kas. 556; *Marion County v. Riggs*, 24 id. 255; Dill., Mun. Corp., § 20; 15 Am. & Eng. Encyc. of Law, 952.)

It is said that in the broader sense municipal corporations include all public corporations, including *quasi* corporations, such as counties, townships, and school districts, and the title of the act is referred to as an evidence that this signification was intended by the legislature. The fact, however, that counties and townships were specifically named in connection with municipal corporations forbids such an interpretation, and shows clearly that it was not the intention of the legislature that municipal corporations should include *quasi* corporations like counties, townships, and school districts. If the

legislature had intended that the term "municipal corporations" should be extended in its meaning so as to embrace all *quasi* corporations, counties and townships would not have been mentioned; and having named these, it is evident that the legislature intended to exclude all other *quasi* corporations. School districts not being ·included in the provisions of the act, it follows that the plaintiffs below had no right to prosecute this action. It could have been brought by the attorney general, or the county attorney of Atchison county, in the name of the state; and if either officer should intervene hereafter, substitution may be made in the district court.

We have examined the other objections urged by plaintiffs in error, and find nothing substantial in them, and, were it not for the fatal defect which has been pointed out, no reason is seen why the judgment might not stand.

The judgment of the district court will be reversed, and the cause remanded for further proceedings.

All the Justices concurring.