## *In re* VINT GREER, *Petitioner.*
### No. 10811.

CITY COURTS OF KANSAS CITY — *act creating, constitutional.* The organization of new courts and limitations upon the jurisdiction of justices of the peace, are not two subjects, but are subdivisions of the same general subject; and chapter 107, Laws 1897, entitled "An act creating two city courts in Kansas City Township, Wyandotte County, Kansas, and defining the jurisdiction thereof, and the powers and duties of the officers thereof, and limiting the jurisdiction of the justices of the peace in said township," is not, therefore, repugnant to that constitutional provision which ordains that no bill shall contain more than one subject; nor has this court the power to declare it unconstitutional because of its being an act special in its nature, the object of which might be attained by a law of a general nature and of uniform operation throughout the State; nor is it unconstitutional because it excludes justices of the peace from jurisdiction in criminal cases, and also limits their jurisdiction in civil cases to the nominal sum of one dollar.

Original proceedings in *habeas corpus.* Opinion filed May 8, 1897. *Prisoner remanded.*

*T. E. & J. A. Smith, M. Cree, Hutchings & Keplinger, Getty & Hutchings* and *Angevine & Cubbison,* for petitioner.

*L. C. Boyle,* Attorney General, for the State.

*W. P. Dillard, D. A. Martin, E. L. Fisher* and *Bishop & Mitchell,* for the City Courts.

DOSTER, C. J.   At the legislative session this year,
an act was passed entitled :   "An act creating two
city courts in Kansas City Township, Wyandotte
County, Kansas, and defining the jurisdiction thereof,
and the powers and duties of the officers thereof, and
limiting the jurisdiction of the justices of the peace in
said township."   Ch. 107, Laws 1897, page 207.   The
second section of this act reads as follows :

" The courts hereby established shall have the same
jurisdiction, civil and criminal, as justices of the peace
now have in this State ; and for the purposes of the
jurisdiction hereby conferred, and of its proper and
necessary exercise, all the laws of this State relating
to the powers, duties and jurisdiction of justices of
the peace, and the practice, pleadings, and proceed-
ings in justices' courts, which are not in conflict with
the provisions of this act, shall apply to said city
courts and the judges thereof, and to the mode of pro-
cedure therein, and to the process thereof, original
mesne and final, so far as the same may be applic-
able :  Provided, that after this act shall take effect,
justices of the peace in said Kansas City Township
shall have no jurisdiction of any case, civil or crimi-
nal, except in civil actions for the recovery of money
only where the amount claimed exclusive of costs,
does not exceed the sum of one dollar ; but this act
shall not apply to any suits or proceedings pending
before said justices of the peace at the time this
act takes effect, nor to the enforcement of judgments
theretofore rendered by them."

The petitioner was arrested upon criminal process
issued out of one of the courts organized under this
act ; and he applies for release therefrom upon a claim
of constitutional invalidity in the statute quoted.   His
objections are as follows :   *First*, the act contains two
subjects, one involving the creation of new courts,
the other, limitations upon the jurisdiction of older
courts, and is therefore repugnant to that constitu-

tional provision which declares that "no bill shall contain more than one subject"; *second*, that the act is a special one, applying to a particular locality only, exempting such locality from the operation of the general laws providing tribunals for the administration of justice, and is therefore repugnant to that constitutional provision which declares that " all laws of a general nature shall have a uniform operation throughout the State ; and in all cases where a general law can be made applicable, no special law shall be enacted "; *third*, that such act is an attempt to deprive the constitutional office of justice of the peace, in the township named, of the jurisdiction belonging to it by the organic law, and to vest the same in courts of mere statutory creation and authority, and is therefore repugnant to those constitutional provisions, one of which provides that " two justices of the peace shall be elected in each township whose term of office shall be two years," and the other, that " the judicial power of this State shall be vested in a Supreme Court, district courts, probate courts and *justices of the peace.*"

That the first of these objections is untenable is patent upon the face of the act. The general subject of such act is courts, with the associated and integral one of their jurisdiction. It is impossible to frame a statute for the creation and organization of courts without defining in the same enactment the boundaries between their jurisdiction and that of other like tribunals.

Nor is the second objection entitled to much more consideration. The question whether the power to enact laws special in their nature is discretionary in the Legislature, or whether the courts may pronounce against its exercise upon the ground that general laws are, or may be made, applicable, was among the first

to be presented to this court for consideration. *The State, ex rel. Johnson, v. Hitchcock*, 1 Kan. 184. It was there said :

" We understand this section of the Constitution as leaving a discretion to the Legislature, for it would be difficult to imagine a legislative purpose which *could not* be accomplished under a general law. If it is possible, as we think it is, to frame a general law under which the purpose of any special law could be accomplished, then that provision of the Constitution, if literally construed, would absolutely prohibit all special legislation. Such is not its purpose. It recognizes the necessity of some special legislation, and seeks only to limit, not prohibit it."

Since the decision of that case, numerous others involving the same question have been presented and similarly decided. *Beach v. Leahy*, 11 Kan. 23 ; *Comm'rs of Norton Co. v. Shoemaker*, 27 id. 77 ; *Harvey v. Comm'rs of Rush Co.*, 32 id. 159 ; *Weyand v. Stover*, 35 id. 545, 551 ; *City of Wichita v. Burleigh*, 36 id. 34 ; *The State v. Sanders*, 42 id. 228 ; *Hughes v. Milligan*, 42 id. 396 ; *Comm'rs of Linn Co. v. Snyder*, 45 id. 636 ; *Comm'rs of Barber Co. v. Smith*, 48 id. 332 ; *Elevator Co. v. Stewart*, 50 id. 378 ; *Eichholtz v. Martin*, 53 id. 486. In *Elevator Co. v. Stewart*, supra, it was remarked : " It will be seen from an inspection of the decisions of this court, commencing with *The State, ex rel., v. Hitchcock*, 1 Kan. 178, that this court has uniformly held that the Legislature has the power in its discretion to pass special laws, although adequate general laws upon the same subject might be enacted, and although in fact such general laws have already been enacted and are at the time in full force and effect, and although such special acts might have the effect to limit the operation of existing general laws or existing laws of a general nature then having a uniform operation throughout the State."

The third objection raises a question of far greater difficulty. The point of attack under this objection is that portion of the act which limits the jurisdiction of justices of the piece to civil actions for the recovery of one dollar and lesser sums. It is argued, that the office of a justice of the peace is a constitutional office; that his court is a constitutional court; that the organic law vests part of the judicial power of the State in him; that to secure to him a tenure of position, a fixed term of office is allowed; that to provide accessible and convenient tribunals of justice, two magistrates are guaranteed to each township; that a total deprivation of criminal jurisdiction and a limitation of civil jurisdiction to the recovery of sums not exceeding one dollar, is, in effect, an abolition of the office and its reduction to a nominal or honorary position. This reasoning possesses weight, and we have given to it careful consideration. Our attention, however, has been called to no judicial authority directly supporting it, except some general reflections indulged in by the Supreme Court of Alabama and the Court of Errors and Appeals of New Jersey. *Perkins v. Corbin*, 45 Ala., 103; *Harris v. Vanderveer's Ex'r*, 21 N. J. Eq. 424. The first of these cases relates to the power of the legislature to abolish a statutory, not a constitutional court, and, instead of denying, upholds the exercise of such power; therefore, whatever is said in it beyond the necessary discussion of the particular subject for decision may be regarded as *obiter dictum*. Neither was the opinion of the judges of the New Jersey court, though learned and elaborate, keyed in the particulars cited to the question for decision. That question did not concern the legislative power to abolish courts or limit their jurisdiction, but involved the validity of an act granting appeals from one court to another. The state-

ment of the case is comprehended in a single sentence, and is as follows : "This was a motion to dismiss the appeal, on the ground that an appeal did not lie from a decree of the Prerogative Court, and that the act of the Legislature granting an appeal from that court was unconstitutional."

In the discussion of some phases of the general doctrine that the constitutional jurisdiction of courts is inviolable at the hands of the legislature, observations made by some judges in other cases seem to lend countenance to the petitioner's view ; but none of such cases involve the concrete queston presented to us for decision. That question is, whether the jurisdiction of a justice of the peace, which is not fixed by the Constitution, and which is implied from it to no extent unless by classifying him as a judicial officer, may be placed at a nominal sum or be made of a nominal character. The answer to such question must, in our judgment, be in the affirmative. The very Constitution which creates the office declares of the officer that " his powers and duties shall be prescribed by law." The Legislature has prescribed his powers and duties by the enactment of a law otherwise unobjectionable. It has limited them, it is true, until but little more remains of the office than the name. It has not, however, totally abolished the office ; and while the bringing of a suit for the recovery of one dollar is so far to the verge of improbability as to be only within the limits of possibility, we cannot say that the office thereby ceases to exist.

It is not said, and cannot be said, that the Legislature is powerless to substantially reduce the jurisdiction of a justice of the peace ; and if this cannot be said, then to what point may not such reduction go? While the office of justice of the peace is an ancient one, known even to the early English law, and exist-

18—58 KAN.

ing in this country long anterior to the formation of our Constitution, yet it cannot be said to have carried into our judicial system any of its traditionary jurisdiction. In this country, at least, that jurisdiction was statutory and variant, both as to subject-matter and amount. Therefore, the Constitution, in creating the office, implied no jurisdiction either of sum or subject, but on the contrary declared that it should "be prescribed by law." It would not be unreasonable to say that what has thus been prescribed or allowed by law may be wholly taken away. But we are not driven to the necessity of so saying in order to sustain the act in question. Suppose the first and only law upon the subject, after the adoption of the Constitution, had been one limiting the jurisdiction of justices of the peace, as in the case before us, to the recovery of money only, when the amount claimed did not exceed one dollar; could its constitutional validity have been assailed upon the ground that nominal jurisdiction only had been conferred? No answer other than a negative one can be returned to this question. If, therefore, such jurisdiction could have been originally limited to such inconsequent sum, it may be reduced thereto notwithstanding it had once been extended beyond.

The authorities upon the precise question here involved, though few, sustain the view we have taken. By a special act of the Massachusetts Legislature, the civil jurisdiction of justices of the peace in the city of Boston was taken away and conferred upon the police magistrates of the municipal corporation. The Supreme Court of the State, in ruling upon the same objection that is here made, remarked:

"Another objection is, that anterior to and at the adoption of the Constitution, justices of the peace held and exercised jurisdiction by law over civil suits

to a certain extent, and that the Legislature could not constitutionally abridge, much less annul that jurisdiction. But there is no color for this objection. The office of justice of the peace is recognized by the Constitution; but the power and jurisdiction of that office is nowhere in that instrument limited or defined. The Legislature has the right to mould the jurisdiction of all courts at its will, so as not to infringe any other provisions of that instrument. It may enlarge or diminish the power and duty of courts and magistrates. All this authority, if not expressly given to the Legislature, as it is, would result from the very nature of legislative power. By virtue of this power the jurisdiction of Courts of Sessions and Common Pleas, both which existed before the Constitution, have been changed, as the circumstances of the commonwealth required. Formerly it was an essential privilege of a justice of the peace to be a member of the Court of Sessions. But gradually the constitution of that court has been changed, and in particular the number of the justices has been limited to a few, specially commissioned for that purpose. Was it ever thought that the rightful power of a justice of the peace has been unconstitutionally wrested from him by the Legislature because he can no longer make one of the Court of Sessions? This objection may as well be made to every alteration by the Legislature of the powers or duties of any of the courts since the adoption of the Constitution; for it is founded upon the right of all courts in existence at that time to the perpetual exercise of all the powers exercised by them antecedently to and at the adoption of that instrument. Such a restriction upon the legislative power would have been found unwise and inconvenient if it had been expressed, and it surely ought not to be implied against all reasonable inferences of the probable intent of the people in forming the Constitution." *Wales v. Belcher*, 3 Pick. 508.

By special act of the Legislature of Minnesota, nearly all the jurisdiction of the justices of the peace of the city of Minneapolis was taken away and vested in a municipal court. The constitutional validity of the

act was challenged upon the same grounds which the petitioner relies upon in this case. The act, however, was upheld. The opinion in full is as follows :

" Section 8, article 6, of our Constitution declares that ' the Legislature shall provide for the election of a sufficient number of justices of the peace in each county, whose duties shall be prescribed by law.' This commits the question of *how many* justices there shall be in any county, and *what* shall be their duties entirely to legislative discretion. Hence, it is not only competent, but proper, for the Legislature to determine for any good reason that none are required in any given county, or portion thereof, or that the duties of such as are required shall be restricted ; as, for instance, where provision is made by law for the exercise of their usual powers, or the discharge of their usual duties, or of such as are withheld from them, by some other tribunal or officer better suited to the purpose in the judgment of the Legislature. Such provision may be made under the last clause of section 1, article 6, of our Constitution, which declares that ' the judicial power of the State shall be vested in a Supreme Court, district courts, courts of probate, justices of the peace, and such other courts, inferior to the Supreme Court, as the Legislature may from time to time establish by a two-thirds vote.' Under the latter clause of this section the Legislature has established the municipal court of Minneapolis, and has, among other things, and presumably for good reasons, provided in Special Laws 1885, ch. 74, § 1, that such court shall have ' exclusive jurisdiction . . . of all civil actions and proceedings heretofore cognizable before a justice of the peace, the defendant or garnishee in which resides within the limits of the city of Minneapolis ' ; and, in section 14 that ' no justice of the peace shall have jurisdiction to issue any summons or process in any civil action, excepting executions, to be served within said city of Minneapolis ; and any service of any such summons or process from a justice of the peace made within said city shall be void.' The authority of the Legislature to make enactments

of this kind is not at all affected by the fact that they will reduce the number of justices.theretofore authorized in a county, or cut down their powers. Both of these results are within the scope of section 8, article 6, as above expounded.

"It follows that, in our judgment, the jurisdiction conferred upon the municipal court of Minneapolis, exclusive of justices of the peace, is authorized by the Constitution, and in this opinion we are supported by *Wales v. Belcher* (3 Pick. 508), as well as by a course of legislation in this State in establishing several other municipal courts with like jurisdiction. See, also, Cooley's Constitutional Limitations, 361." *Burke v. St. Paul Rld. Co.*, 35 Minn. 172.

It is not denied that there are limits to legislative interference with the existence and jurisdiction of the courts, which may not be exceeded. Should an excess of authority in this respect be undertaken, this court will not hesitate to vindicate the judiciary branch of the government. Should the Legislature commit any wanton and unreasonable exercise of its authority to regulate the jurisdiction of the courts, the people will promptly rebuke the outrage and command the restoration of the power. Happily, therefore, there is no ground for the indulgence of a pessimistic fear of danger to the political system through assaults thereon by the popular branch. Rather, in the opinion of the writer, is danger to be feared from the exercise of an excess of authority by the courts themselves.

The petitioner's application for discharge is denied, and he is ordered to be remanded.