M. C. Inlow and G. A. Griffes, *Partners*, v. The Board of County Commissioners of Graham County.

### No. 129.

Laws 1895, Ch. 271—*held to be constitutional.* The plaintiffs, publishers of the county paper in Graham County, failed to file the proof of publication of notice of tax sale for the year 1893 within fourteen days after the last issue of the paper containing the notice, as required by paragraph 6957 of the General Statutes of 1889. The Legislature of 1895 passed a special Act (ch. 271, Laws 1895) curative of this irregularity, and requiring the county of Graham to pay the plaintiffs their fees for such publication. This special Act does not violate the provisions of section 17 of article 2 of the State Constitution. The title of the special Act, which is as follows, "An act to legalize the printer's affidavit of the publication of notice to sell real estate for delinquent taxes and the filing of the same, and the collection of taxes and charges thereunder by the county treasurer in the county of Graham, State of Kansas, in the year 1893," clearly expresses the subject-matter of the bill, and the Act does not violate the provisions of section 16 of article 2 of the Constitution. The fourteen days within which the proof of publication is to be filed begins to run from the date of the last issue of the paper containing the notice of sale.

Error from Graham District Court.    Hon. Chas. W. Smith, Judge.    Opinion filed November 5, 1897. *Reversed.*

392    INLOW v. GRAHAM COUNTY.

N. Dept.         Opinion.   Mahan, P. J.        6 Kan. App.

*H. J. Harwi*, for plaintiffs in error.

*Geo. W. Jones*, County Attorney, for defendant in error.

MAHAN, P. J. The plaintiffs in error, publishers of a paper in Graham County, published a notice of delinquent tax sales for 1893. The last publication was in the issue of September 1, 1893. They failed to file the proof of publication, as required by paragraph 6957 of the General Statutes of 1889, within fourteen days thereafter, but did file the proper affidavit on the nineteenth day of September. By this failure they forfeited all right to pay for the publication of the notice, under the provisions of the paragraph referred to.

The Legislature of 1895 passed a special act making this claim for the printer's fees a legal and valid claim against Graham County in favor of the plaintiffs. Ch. 271, Laws 1895. . The plaintiffs presented to the Board of County Commissioners of Graham County a duly verified claim for said fees. The claim was rejected, and the plaintiffs appealed to the District Court of Graham County. Judgment was for the defendant.

There is no objection made to the character of the work done, but it is insisted that the plaintiffs forfeited all. right to payment, and that the Act of the Legislature of 1895 attempting to impose an obligation for the payment of this claim upon the County is unconstitutional, because it suspends the operation of a general law of the State, because it attempts to create an obligation against the County which it was prohibited from paying by the general law, and because it violates the provisions of section 16, article 2, of the Constitution, as the bill contains more than one

INLOW v. GRAHAM COUNTY.          393

Nov. 5, 1897.          Opinion.  Mahan, P. J.          W. Div.

subject and the subjects or objects of the bill are not clearly expressed in its title.   The contention that the right to compensation was forfeited is without doubt correct.   Plaintiff's counsel contends that the fourteen days provided by the statute did not begin to run until the end of the week after September 1, that is, that the publication was not completed until a week had elapsed after the issue of the paper.   The statute seems clearly to indicate that the Legislature intended otherwise — that the fourteen days was intended to begin to run from the date of the last issue containing the publication.   The County and State received the full benefit of the services of the plaintiff, except that they were not authorized under the law to sell the land for an amount including the printer's fees provided by the statute.   If they should include these statutory fees in the amount for which the land was sold, under the decisions of the Supreme Court, the sale would be voidable.   However, neither the State nor the County suffered any disadvantage from this.

The next question is not free from difficulty.   It is true that this special Act annuls the operation of the general law so far as it applied to the plaintiffs. Our Supreme Court has, however, upheld laws of a similar character where it was admitted that they had the effect of suspending the operation of a general law of the State.  *Comm'rs of Norton Co. v. Shoemaker*, 27 Kan. 77.   The special Act, the validity of which was sustained in that case, fixed the salaries of county clerk and treasurer in certain counties, including Norton County.   There was, at the time, a general statute fixing salaries of all county officers, and, so far as the general statute applied to the counties named in the special Act under consideration in that case, its operation was suspended — annulled.   Yet the court

394 INLOW v. GRAHAM COUNTY.

N. Dept.        Opinion.   Mahan, P. J.        6 Kan. App.

held that it did not violate the provisions of section
17 of article 2 of the Constitution. The court held
that it came within the decision of *Beach v. Leahy,
Treas.* (11 Kan. 23). In the last-mentioned case the
special Act under consideration was one authorizing a
single school district in Neosho County to issue bonds
to build a schoolhouse. The court sustained the va-
lidity of the law. The opinion was delivered by Mr.
Justice Brewer, who held that the Legislature had a
discretion, and it was for it to determine whether the
purpose of the Act could or could not be expediently
accomplished by a general law ; and if, in the judg-
ment of the Legislature, it could not, that it had a
discretion to pass a special act, notwithstanding, so
far as that school district was concerned, it interfered
with the general statute in relation to the same sub-
ject-matter. Chief Justice Horton, in *Comm'rs of
Norton Co. v. Shoemaker,* supra, refers to the case of
*The State, ex rel., v. Hitchcock* (1 Kan. 178), which is to
the same effect.

Counsel, in his brief upon this branch of the case,
refers us to *Darling v. Rodgers* ( 7 Kan. 592 ) and *Rob-
inson v. Perry* ( 17 id. 248 ), as decisive of the ques-
tion. These cases were also relied upon in the case
of *Comm'rs of Norton Co. v. Shoemaker,* supra, as con-
clusive authority against the statute under consid-
eration in that case ; but there is a wide difference
between those cases and the one under consideration.

In the case of *Darling v. Rodgers,* supra, the court
had under consideration the Herd Law of 1870,
which was confined in its operation to six counties of
the State. There was in force at that time a law of a
general nature, entitled "An act in relation to fences"
( Gen. Stat. 1868, p. 486 ), providing what should
constitute a legal and sufficient fence and requiring

fields to be inclosed therewith, under which a land-
owner could not recover damages for the trespass of
cattle unless his land was so fenced. The law of
1870, called the Herd Law, so far as six counties were
concerned, established an entirely different rule for
those counties. It established an entirely different
rule in those counties from that in the other counties
where the general law in relation to the same subject
was in force. It was an attempt to create a general
law not having a uniform operation throughout the
State ; and it likewise attempted to interfere with the
operation of the general law of the State in relation
to the same subject-matter, and was clearly in viola-
tion of the first clause of section 17, article 2, of the
Constitution. It was not intended to supply a defect
or cure an informality in the proceedings of a court
or of a public officer acting within the scope of his
authority ; nor was it intended to give effect to acts
to which there was an express assent of the parties
interested, as in the case under consideration. That
Act was not like the one now under consideration ; it
was intended to have paramount operation, while the
purpose of this was to waive a forfeiture, and it was
applicable to but one particular fact.

In the case of *Robinson v. Perry*, supra, the court
had under consideration chapter 116 of the Laws of
1870, purporting to amend section 1 of chapter 115
of the Laws of 1869, prohibiting sheep from running
at large in Doniphan County. The law of 1869,
which the Legislature attempted to amend, was a law
of a general nature, the operation of which the Legis-
lature attempted to restrict to a few counties. The
amendment was a general law in effect, but limited
in its operation by excluding the county of Doniphan.
Both of these acts were in direct conflict with the first

clause of section 17, above cited, and were so held by the Supreme Court.

This case comes within the rule laid down in *Comm'rs of Norton Co. v. Shoemaker*, supra; *Beach v. Leahy, Treas.*, supra; *State of Kansas, ex rel., v. Hitchcock*, supra; *City of Wichita v. Burleigh*, 36 Kan. 34; *Knowles v. Board of Education*, 33 id. 692.

In the case of *City of Wichita v. Burleigh*, supra, the Supreme Court says: "The Legislature may pass a special act where a general law cannot be made applicable, and this although the special act may to some extent affect the uniform operation throughout the State of other laws; and, generally, it is a question for the Legislature to determine whether a general law can be made applicable, or not." We are, therefore, of the opinion that this objection cannot be sustained.

It is also objected that the Act attempts to create an obligation against the County which did not exist before. We are of the opinion that this cannot be sustained. It is retrospective legislation. There was at least a pre-existing moral obligation. The County had contracted an indebtedness which it had authority to contract; the plaintiffs had performed services which were of value to the County and State; the State had declared that in case of failure to file the necessary affidavit, the plaintiffs should be precluded from payment — should forfeit what they had earned under the contract — or, rather, in the language of Mr. Justice Johnston (in *Fox v. Cross*, 39 Kan. 355), it was not earned until the affidavit was filed as provided by the statute. The State had power to waive this condition — to waive the forfeiture — and under such conditions retrospective legislation is not a violation of the Constitution. It was the province of the

INLOW v. GRAHAM COUNTY.            397

Nov. 5, 1897.        Opinion.   Mahan, P. J.           W. Div.

Legislature to determine whether there was a pre-existing moral obligation. The court might also inquire into this question, but there are not two sides to it; that the County has derived all the benefits that it could derive from the performance of the contract, there is no question; that the plaintiffs had performed valuable services, there is no question. But for the provisions of the statute, they were entitled to payment, and the Legislature simply said: "We waive the provisions of this statute in this particular case and direct the County, in behalf of the State, to discharge this moral obligation." *Craft v. Lofinck, Treas.*, 34 Kan. 365; *Comm'rs of Sedgwick Co. v. Bunker*, 16 id. 498.

The contention that the special Act violates the provisions of section 16 of article 2 of the Constitution is likewise untenable. The title to this Act is very full and complete. It is, "An act to legalize the printer's affidavit of the publication of notice to sell real estate for delinquent taxes and the filing of the same, and the collection of the taxes and charges thereunder by the county treasurer in the county of Graham, State of Kansas, in the year of 1893."

There is but one object expressed in this title, and that is, to cure a defect occasioned by the failure of the plaintiffs to file their affidavit within time to create a legal obligation against Graham County so that the County might include in its sale of land the charges for the publication of the notice. In order to accomplish this purpose, the County must be liable to the plaintiffs for this bill and must pay the same. That purpose is clearly expressed in the title. *The State, ex rel., v. Sanders*, 42 Kan. 228; Cooley's Constitutional Limitations, *144 (6th ed. 172), *et seq.*

It follows that the judgment of the District Court

holding the County not liable for this bill was erroneous and must be reversed.

Judgment reversed, and case remanded with direction to grant a new trial.